No. 33,586

Cora McGhay, Widow of Estel E. McGhay, Deceased, and Estel McGhay, Minor Dependent of Estel E. McGhay, Deceased, *Appellees*, v. Ray E. Eaton and Harold Peterson, Partners, d.b.a. Eaton Transport Company (*Defendants*), and The Bituminous Casualty Company, *Appellant*.

(73 P. 2d 15)

Opinion filed November 6, 1937.

*D. C. Hill, R. H. Kaul,* both of Wamego, *Carlin P. Smith* and *Gordon R. Boyer,* both of Kansas City, Mo., for the appellant.

*Hugh C. Larimer, Thomas H. Taggart* and *Ray McCombs,* all of Topeka, for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was a proceeding under the workmen's compensation act. The commissioner made an award in favor of the claimants as dependents of the deceased workman, from which the employer and the insurance carrier appealed to the district court, which likewise found in favor of the claimants. The insurance carrier alone appeals to this court.

A brief statement suffices to show appellant's contentions. During the latter part of October 22, 1936, Estel E. McGhay, driving a truck of the Eaton Transport Company, was proceeding from Wichita to Kansas City. The truck was seen by the side of U. S. highway No. 40, near the east side of the city of Wamego, as early as 11:15 p. m. of that day. On the next morning at about 7:30 the truck was discovered with the motor running, and the driver dead in the cab of the truck. The transport company was insured in the

Bituminous Casualty Company, under a ten-day binder stating it was effective at 12:01 a. m., October 13, 1936, to expire without notice at 12:01 a. m., October 23, 1936. The binder had printed at the bottom thereof a statement it was not valid unless issued and signed by an authorized representative. It was so countersigned on October 14, 1936. Later, and on October 26, 1936, another ten-day binder was issued, effective from 12:01 noon of that day, and thereafter an insurance policy, effective as of the same time, was issued.

Appellant contends the evidence shows the deceased workman had abandoned his employment prior to his death; that there is no direct evidence of the cause of death, and that, in any event, its insurance contract evidenced by the first binder had expired prior to the death, and the second binder and the policy had not been issued until after the death, and it was not liable.

Without detailing the evidence to support the findings, we shall assume that the workman was engaged in the course of his employment under the compensation act and had not abandoned it, and that he was accidentally killed by carbon monoxide fumes. In his findings the commissioner stated:

"There is little, if any, testimony from which to ascertain the exact hour of death. This might be material as far as the insurance carrier is concerned, for the reason that it is claimed that its coverage of respondent expired at 12:01 a. m. the morning of October 23, 1936."

and

"The commissioner finds that the deceased workman met his death by accidental injury arising out of and in the course of his employment with respondent at about the hour of four o'clock a. m. the morning of October 23, 1936."

and taking into consideration the two binders and the policy, respondents were covered by the policy. In connection with the same matters, the district court found:

"V.

"That the said Estel E. McGhay, the deceased workman, met his death at sometime between the hours of 11:15 p. m., October 22, 1936, and 7 a. m. of October 23, 1936, the exact time not being shown by the evidence. That death was caused by carbon monoxide poisoning and that the same was an accidental injury arising out of and in the course of his employment with respondent as contemplated by statute."

"VII.

"That at the time of the death of the said Estel E. McGhay the respondents herein were covered by compensation insurance issued by the Bituminous Casualty Company, both by binder and insurance policy."

The abstracts and briefs all seeming to show the hearings before the commissioner and the district court were on the theory that liability accrued at the time of death and not when the injury occurred or the workman became afflicted, we have sent for and obtained the transcript of evidence, to determine whether or not there was any evidence tending to show when the deceased workman was injured, as well also to ascertain whether there was any evidence from which it could be determined when he had died.

Under the terms of the act prescribing limitations (G. S. 1935, 44-535), the right to compensation, including cases where death results from the injury, accrues at the time of the accident, and the whole act is framed on that theory. A careful examination of the transcript discloses that with one possible exception, hereafter noted, there is no evidence whatever as to when the deceased was injured, as distinct from when he died, except such as is implied in the fact he died from carbon monoxide gas inhalation which obviously preceded his death. The evidence as to time of death showed the following: One witness saw the truck about 11:15 p. m. on October 22 standing by the highway. She was not asked whether the motor was then running. Another witness saw the truck about 3 a. m. on October 23. He did not state whether the motor was running. The witness Wendroth is an agent for the Standard Oil Company. He and a driver passed the truck about 7:30 a. m. on October 23. The motor of the parked truck was running fairly fast, "it wasn't racing and it wasn't idling." He saw the driver in the truck cab and tried to waken him. He opened the cab door and spoke two or three times. The driver's leg dropped down to the running board. He put the leg back, shut the door and went around to the other side, and on looking through the window could see the driver had been vomiting. Wendroth shut off the motor. The windows of the cab were closed. He called Doctor Brunner. He testified with respect to gas fumes and that he recognized such fumes at the truck, but he was not asked anything about how long they might be breathed before they would take effect. Doctor Brunner testified the driver was dead when he arrived on the scene. In describing the condition of the body in the truck, he said:

"Well, the body was crosswise in the seat, you understand, like a man leaning back going to sleep. The head was down like this and the body looked very natural; in fact, the color was good. Almost, I would say, you would hardly think the patient was dead. There was only one thing that showed he had been dead some time. That was, he was purging from the mouth and nose.

That simply means there was foam purging out from his nostrils and mouth and that had dropped down on to his coat.

"Q. From the observation of that foam you have described, your experience in your profession caused you to believe the patient had been dead for some time. A. It did."

In answer to other questions, the doctor stated:

"Q. Now, in your opinion as a doctor and physician, what would you say as to the carbon monoxide gas causing this deceased to become drowsy and sleepy prior to actually stopping there with his truck? A. In all probability it might have done that. It depends on whether the windows were open.

"Q. When you arrived there, were the windows open or closed? A. No, they were shut."

Outside of the evidence the windows of the truck cab were closed at the time the body was found, there was no evidence tending to show how tight the cab was, nor how long a person might be in becoming affected by carbon monoxide fumes, nor how speedily they would cause either slight or serious injury. Neither is there any testimony bearing directly on whether rigor mortis had set in; the only statement tending thereto was Wendroth's statement that when he opened the cab door the leg fell down. The respondent offered the testimony of two physicians. One stated that rigor mortis generally sets in in from two to six hours. The other stated that in his opinion a person found dead under the conditions stated had been dead not to exceed two hours. While it is argued the district court found death to have occurred between 11:15 p. m. and 7 a. m., it also found the exact time was not shown by the evidence. Giving the largest credence we can to the evidence, and assuming the driver's body was rigor mortis when found at 7:30 a. m., death did not occur before 1:30 a. m. Any finding as to an earlier time lacks support in the evidence. Nor is there any evidence which warrants a finding that the deceased was affected in any degree by carbon monoxide gas at any particular time prior to death, and especially that he was so affected prior to 12:01 a. m. of October 23, nor did the commissioner or the district court make any such finding. We are of the opinion that insofar as the appellant is concerned, there is no liability on its part unless by reason of the chain of circumstances relating to the insurance binders and policies.

The district court's finding with respect to insurance was:

"That prior to the death of the workman the respondent had made application to the Bituminous Casualty Company through the Goodpasture Insurance Agency of Hutchinson, Kan., for compensation insurance. That a ten-day

binder was issued to the respondent by the Bituminous Casualty Company, dated October 13, 1936, and countersigned by the insurors, authorized agents, on October 14, 1936, and that thereafter and on October 26, 1936, another ten-day binder, and also an insurance policy was issued to respondent by the insuror and that a payment has been made on said insurance to the insuror by the respondents."

The first binder reads as follows:

"STATE OF KANSAS                                    WORKMEN'S COMPENSATION
                                                                                No. 4420

TEN-DAY BINDER

THE BITUMINOUS CASUALTY CORPORATION, ROCK ISLAND, ILL.

Hereby acknowledges itself bound on and after the effective date and hour hereof, under a contract of workmen's compensation insurance to Eaton Transport of Salina, Kan., located at Salina and surrounding vicinity in Kansas.

The insurance hereunder undertaken by the company is subject to all the terms, conditions and limitations contained in the policies, including endorsements attached thereto, in accordance with the company's requirements respecting risks of the kind insured hereby.

This binder is effective at 12:01 a. m., October 13, 1936, and shall expire without notice at 12:01 a. m., October 23, 1936.

The corporation will charge an earned premium in accordance with the manual rate in effect at the time the binder is issued per $100 of pay roll unless a policy covering the binder period is issued to and accepted by the employer or assured.                                    BITUMINOUS CASUALTY CORPORATION,
                                                        By H. W. COZAD, *President.*

Countersigned at Kansas City, Mo., this 14th day of October, 1936.
                                    By C. F. CRIST, JR., *Authorized Representative.*

Not valid unless issued and signed by an authorized representative."

The second binder was of like form, but was countersigned at Kansas City October 26, 1936. It was effective at 12:01 noon October 26, 1936, and its expiration date was 12:01 noon November 5, 1936.

The policy was issued under date of October 26, 1936.

The evidence shows payments of premiums were made on the above contracts by the employer to the insurance company. The statements in the binders show that both the insurance company and the transport company contemplated coverage against liability under the workmen's compensation act, section 32 of which (G. S. 1935, 44-532) provides the employer shall secure compensation to his employees by insuring in one of two ways: "First, by insuring and *keeping insured* the payment of such compensation with any stock corporation . . . authorized to transact the business of workmen's compensation insurance in the state of Kansas . . ." (Italics inserted.)

By reason of the statute and the provisions of the insurance policy hereafter mentioned it must be concluded that the course of dealing between the employer and the insurance company was in an attempt to comply with the statute.

It has been held repeatedly that binding slips, receipts or memoranda are contracts for temporary insurance. (See 1 Cooley's Briefs on Insurance, 2d ed. p. 809; 1 Couch on Insurance, § 91, p. 162; Ann. Cas. 1914C, p. 727.) And whether considered separately or together, that the binders constituted one or more contracts of insurance cannot be gainsaid, for by their terms the insurance company acknowledged itself bound.

It is the contention of the appellant company that by reason of the explicit statement of the first binder, its liability thereunder ceased at the time fixed; that the second binder and the policy of insurance were effective at a later date, and that in the intervening time it was without liability. Is that contention good? It will be noted that the binders made the insurance subject to all the terms, conditions and limitations contained in the policies respecting risks of the kind insured. If there was an uncertainty in that respect as to the policy referred to, it was made certain by the particular policy issued on October 26, 1936. That policy specifically states the insurance company is bound by Laws 1927, chapter 232, sections 32, 50 and 51, and will continue to be so bound. The sections referred to are parts of the present workmen's compensation act (G. S. 1935, 44-532, 44-542 and 44-543), section 32 of which has been referred to and quoted from above. The policy also provides for cancellation upon not less than ten days' written notice.

The evidence showed that under date of October 17, 1936, the Hutchinson agent of the insurance company mailed to the Eaton Transport Company at Salina the first binder, the accompanying letter stating that in the very near future necessary application blanks would be sent to be filled out and returned for issuance of the policy, and under date of October 20, 1936, such blanks were sent with request they be returned immediately so that the policy might issue before expiration of the ten-day binder. Bearing in mind that it took some time for mail to pass from Hutchinson to Salina, for the application to be completed and returned to Hutchinson, and then to be sent to Kansas City, where the policy would be issued, it is apparent the time allowed would not be sufficient for full accomplishment before such ten days expired at 12:01 a. m. of October 23, 1936.

Bearing in mind, also, the statutory requirement known to the employer and the insurance company that the employer insure and keep insured; that the insurance company issued its first binder referring to a policy making specific reference to such requirement and requiring notice of cancellation, and that as a matter of fact the insurance company did issue such policy, can it be said the insurance company could take advantage of the expiration date on the first binder and by reason of a second binder and insurance policy issued and effective as of a subsequent date, create a hiatus that would relieve it from liability during that intervening time? Or should it be held that the entire course of dealings was in contemplation of the statute requiring the employer to insure and keep insured, to secure compensation to the workmen? The record before us presents a stronger case for holding the insurance company liable than was disclosed in *Insurance Co. v. Corbett,* 69 Kan. 564, 77 Pac. 108, where it was said:

"It is said that it is a policy of insurance which makes the contract. Such is not the law. The conduct of the parties, including the retention of the plaintiff's money by the company, together with the application, was sufficient to establish a contract, in the absence of a controlling provision of the bylaws or an agreement to the contrary. (*Insurance Co. v. Stone,* 61 Kan. 48, 58 Pac. 986.)" (p. 570.)

We conclude the record discloses a course of conduct and dealings between the employer and the insurance company which warranted the district court in finding that at the time of death of the workman the employer was covered by compensation insurance issued by the appellant.

The judgment of the district court allowing compensation to the dependents of the deceased workman is affirmed.