228 So.2d 916 (1969)
James W. JACKSON, Ethel B. Jackson and Ruth Adamson, Appellants,
v.
Joseph C. RUPP, M.D., Appellee.
No. 2375.
District Court of Appeal of Florida. Fourth District.
November 7, 1969.
Rehearing Denied January 5, 1970.
*917 William E. Blyler of Patterson, Maloney & Frazier, Fort Lauderdale, for appellants.
Edward A. Perse of Carey, Dwyer, Austin, Cole & Selwood, Miami, for appellee.
CROSS, Chief Judge.
Plaintiffs-appellants, James W. Jackson, Ethel B. Jackson and Ruth Adamson, appeal from a final judgment entered by the trial court on a directed verdict for the defendant-appellee, Joseph C. Rupp, M.D., in a cause of action for damages for performance of an unauthorized autopsy. We reverse.
Clara B. Jackson, deceased, was admitted to Holy Cross Hospital by her treating physician, one Dr. F.A. Osterman, on September 17, 1966. She was then 82 years of age. When admitted she was in a highly agitated state with tentative diagnosis listing Mrs. Jackson's illness as abdominal pain, dehydration and an impression of an intra-abdominal carcinoma.
Upon her admission to the hospital, Dr. Osterman performed an examination which disclosed an impacted colon. The doctor ordered a removal of the fecal impaction and placed Mrs. Jackson on demerol and phenergan for abdominal pain. She was also put on a liquid diet, given a blood transfusion and a lower G.I. series of x-rays was ordered. Later Mrs. Jackson was placed on intravenous fluids, given vitamins, a soft diet and ordered to get out of bed each day and move around.
On September 30, 1966, Mrs. Jackson fell out of bed and sustained an intertrochanteric fracture of the right hip. Orthopedic surgeons performed an open reduction and insertion of Jewett Nail to repair the hip. After the surgery on her hip, Mrs. Jackson gradually went downhill and expired on November 4, 1966. Mrs. Jackson died without giving authority to anyone to perform an autopsy on her body after death.
Following Mrs. Jackson's expiration, Dr. Osterman, the treating physician requested permission of Mrs. Jackson's next of kin to perform an autopsy. The permission was refused.
The defendant, Joseph C. Rupp, who is both a pathologist at Holy Cross Hospital and an Associate County Medical Examiner of Broward County, requested permission of James W. Jackson, one of the *918 plaintiffs and the son of the deceased, to perform an autopsy on Mrs. Jackson's body. Permission was denied.
Thereafter without any request of the Prosecuting Attorney of Broward County, Dr. Rupp made the determination that Mrs. Jackson's death fell within the ambit of his jurisdiction as an Associate County Medical Examiner, and on November 4, 1966, performed an autopsy on the body of Mrs. Jackson. The autopsy revealed that the cause of Mrs. Jackson's death was intestinal obstruction and adenocarcinoma of the ascending colon.
On June 28, 1967, the plaintiffs filed their complaint against Dr. Rupp alleging the performance of the unauthorized autopsy. Dr. Rupp answered and alleged therein the affirmative defense of authority under law by reason of his position as Associate Medical Examiner.
Thereafter the cause was set and came on for trial, and at the conclusion of the plaintiffs' case the defendant moved for a directed verdict. The trial court granted the motion and entered final judgment. This appeal followed.
We have for our determination whether the testimony presented by the plaintiffs at the time they rested their case was essentially so devoid of probative evidence that the jury could not as a matter of law find a verdict for the plaintiffs. The cause of action for an unauthorized autopsy has not heretofore been dealt with by the courts of the State of Florida. This being so, the necessity of investigating the background of a cause of action of this nature appears evident.
The early English common law recognized no property or property rights in the body of a deceased person. Reg. v. Sharpe, Dears and BCC, 160, 169 Eng.Reprint, 959, this being due undoubtedly to the fact that the ecclesiastical courts exercised jurisdiction over the affairs of decedents. This doctrine found its way through early American case law. See: Sacred Heart of Jesus, Polish Nat. C. Church v. Soklowski, 1924, 159 Minn. 331, 199 N.W. 81, 33 A.L.R. 1427. The logic behind these early cases was that a living person could not suffer any legitimate recognizable damage from an act of mutilation on a corpse.
As the American society progressed and became more sophisticated, its courts have held there is a cause of action for an unauthorized autopsy. The basis for recovery is found in the personal right of the decedent's next of kin to bury the body rather than any property right in the body itself. 22 Am.Jur.2d, Dead Bodies, § 5. An autopsy is said to be an interference with this right because the very act of dissecting a body prevents its burial in a proper manner. This personal right to bury a body falls on the person or persons who are in closest relationship to the deceased. 22 Am.Jur.2d, Dead Bodies, § 7.
In those jurisdictions recognizing the cause of action for unauthorized autopsy, the courts are not primarily concerned with the extent of the physical mishandling, injury or mutilation of the body, per se, but rather with the effect of the same on the feelings and emotions of the surviving relatives, who have the right of burial. 25A C.J.S. Dead Bodies § 8(1); 22 Am.Jur.2d, Dead Bodies, §§ 31, 32, 42 & 43; Liberty Mut. Ins. Co. v. Lipscomb, 1937, 56 Ga. App. 15, 192 S.E. 56; Aetna Life Ins. Co. v. Burton, 1938, 104 Ind. App. 576, 12 N.E.2d 360; Alderman v. Ford, 1937, 146 Kan. 689, 72 P.2d 981; Beller v. City of New York, 1945, 269 App.Div. 642, 58 N.Y.S.2d 112; Zaslowsky v. Nassau County Public General Hospital, 1960, 27 Misc.2d 379, 209 N.Y.S.2d 921; Trammell v. City of New York, 1948, 193 Misc. 356, 82 N.Y.S.2d 762.
In an action for an unauthorized autopsy founded solely in tort in order for recovery to be effected for damages resulting from mental pain and anguish unconnected with physical injury, the wrongful act must be such as to reasonably imply *919 malice or such that from the entire want of care or attention to duty or great indifference to the person, property, or rights of others such malice would be imputed as would justify assessment of exemplary or punitive damages. Accord, Kimple v. Riedel, Fla.App. 1961, 133 So.2d 437.
In spite of the fact that an exclusive right does vest in the surviving spouse, relative, or next of kin to dispose of a corpse, autopsies may be authorized by public authorities for the protection of health or the discovery of crime. 18 Am.Jur.2d, Coroners or Medical Examiners, § 14.
At the time of the performance of the autopsy in question, the legislature of this state had promulgated ch. 27439, Laws of Florida, Special Acts of 1951. This act authorized and empowered the Board of County Commissioners of Broward County, Florida, to employ and appoint a County Medical Examiner. It authorized and empowered the Board of County Commissioners to fix the County Medical Examiner's term of employment, his compensation, and it empowered the County Medical Examiner to investigate deaths of persons resulting from criminal violence by casualties, by suicide, suddenly when in apparently good health, when not attended by any physician, in prison, or in any suspicious or unusual manner. Section 3 of ch. 27439 fixes the powers of the County Medical Examiner:
"Section 3. When in Broward County, Florida, any person shall die of criminal violence, by casualty, by suicide, suddenly when in apparent good health and when unattended by any physician or Christian Science Practitioner, or in any prison or penal institution, or in any suspicious or unusual manner, the County Medical Examiner shall have the power and authority to perform such duties as may be provided by law and by this Act, and to make such examinations, investigations and autopsies as may be requested by the prosecuting attorney of any court of record having jurisdiction of felonies in Broward County."
Section 3 does not embrace every means of death but is qualified by the specific language incorporated therein. We are of the conviction that in order to allow a county medical examiner to perform an autopsy authorized within the ambit of § 3, (1) the death should be shown to have occurred under the specific language of § 3, and (2) that to trigger § 3 a necessary condition precedent exists, i.e., the request by the prosecuting attorney of any court of record, having jurisdiction of felonies in Broward County, Florida, made to the County Medical Examiner to make an examination, investigation, or autopsy.
We glean from the record of testimony elicited from Dr. Rupp as to why he performed this autopsy:
"* * * So I simply as a matter of courtesy called the Jackson family, explained the circumstances that with this hip fracture there was a possibility that death was directly the result of this accident, that for reasons of insurance or possible litigation or for simply an accurate determination of the cause of death in the role that this hip fracture played in this case that it was necessary in my opinion that an autopsy be performed, that Dr. Osterman was in error not to consult our office first, but he had already consulted them and that I was merely calling to ask that an autopsy be done with their permission, implying that it would be done, but that as a matter of courtesy I wanted them to change their minds, do away with their objections to the autopsy and that it be done with their permission." (R-352)
It is patently obvious from Dr. Rupp's testimony that he might have performed the autopsy not because Mrs. Jackson died in any of the specific circumstances to bring the autopsy within the ambit of § 3, ch. 27439, but because of circumstances far removed from the language embodied *920 in § 3. Testimony also elicited from Dr. Rupp reveals that he was never requested nor did he solicit the request of the Prosecuting Attorney in Broward County in order that he might perform the autopsy in question:
"Q Did you consult with the State Attorney's office before you made this autopsy?
"A Did I consult with them before I made this autopsy?
"Q Yes, sir.
"A No, I did not." (R-370)
The evidence thus far produced at trial with proper inferences that could be deduced therefrom is that Dr. Rupp lacked the request of the Prosecuting Attorney of Broward County to perform the autopsy, and that Dr. Rupp was intent in performing the autopsy irrespective of great indifference to the plaintiffs and their refusal to grant permission. Such is sufficient to withstand the thrust of a motion for a directed verdict.
Accordingly, the final judgment is reversed and the cause is remanded with directions for further proceedings consistent with this opinion.
Reversed and remanded with directions.
REED, J., concurs.
ADAMS, ALTO (Ret.), Associate Judge, dissents, with opinion.
ADAMS, ALTO, Associate Judge (dissenting).
The worth of a dissenting opinion has often been debated. In this instance the case is well stated in the majority opinion. However, this writer is of the view that there is no basis to predicate a judgment for plaintiff, because the defendants evidenced no malice to anyone; the autopsy was performed in the usual professional manner and without an improper motive. The rule is stated and discussed in Kirksey v. Jernigan, Fla. 1950, 45 So.2d 188, 1 A.L.R.2d 766, and other cases there cited In applying the settled law to these facts it is my view that the circuit judge was correct.
The burden of appellant's brief, however, makes no reference to malice or bad motive but rather belabors the question of whether Chapter 27439, Special Acts of Florida, was applicable. Granted the act did not cover the doctor; his mistaken belief however should not ipso facto render his professional act malicious, without which this action would not lie.
It is therefore my view that the judgment should be affirmed.