# IN RE: ESTATE OF STEVENTON

## Case No. 89-2286-CP

Fifteenth Judicial Circuit, Palm Beach County

August 4, 1989

### APPEARANCES OF COUNSEL

**John S. Doran**

**Richard W. Springer**

### OPINION OF THE COURT

VAUGHN J. RUDNICK, Circuit Judge.

### *ORDER GRANTING TEMPORARY INJUNCTION*

In the cause a dispute has arisen between Laura H. Steventon the widow and, Ralph G. Steventon, Jr., Linda Messer and Elizabeth Roye, the deceased's children from a prior marriage, concerning the disposition of the deceased's remains resulting from his cremation. At the time of death there existed an active file of dissolution of marriage Case No. CD-88-9332-FA in the Fifteenth Judicial Circuit, Palm Beach County, Florida, wherein the deceased Ralph G. Steventon sought dissolution of his marriage from Laura H. Steventon, and she in her answer filed December 9, 1988, counter petitioned for dissolution of the

parties marriage. Discovery was being pursued in that court file as late as February 1, 1989; the deceased expired June 29, 1989. The parties in this dispute have been unable to agree amicably to the disposition of the deceased remains.

There appears to be no controlling precedent in Florida addressing the question presented to this court. The children filed their petition for administration of the deceased's estate on July 6, 1989, requesting Ralph G. Steventon, Jr., be appointed personal representative, and the widow Laura H. Steventon filed her petition for administration July 7, 1989, seeking the appointment of personal representative; presently the court has not made an appointment.

The children moved the court for emergency hearing requesting a temporary or permanent injunction enjoining the widow from removing the remains of the decedent from the state of Florida until such time as the issue could be presented to and ruled upon by the court. The first effort of counsel for the children to bring this matter before the court was at ex-parte hour wherein no more than ten (10) minutes is allotted to any particular matter presented to the court for disposition; suffice it to say that a matter of such grave and personal concern could not be adequately presented to the court in such a brief period of time, and the court directed counsel to procure a scheduled hearing. Counsel then procured the emergency hearing and attempted to present their entire case within a fifteen minute period; including their opening statements, evidence, arguments and memoranda of law. The court is flattered by counsel's assumption that matters of such importance, complexity and uniqueness can be properly attended to and ruled upon within the time allotted. This matter is one of first impression in the State of Florida, and foreign jurisdiction confronted with similar situations have required full evidentiary hearings in an effort to resolve the issue pursuant to the principals of equity jurisprudence. During the brief presentation to the court neither party had the opportunity to fully present its evidence, and the court sustained objections to questions asked of an interested witness as to oral conversations that witness had with the deceased prior to death concerning a possible reconciliation of the marital difficulties.

The Supreme Court of Florida has ruled in the absence of a testamentary disposition a surviving spouse *or next of kin* has the right to possession of the body of the deceased person for the purpose of burial, sepulture or other lawful disposition which they may see fit to give the body. The invasion of such right by a third party unlawfully withholding the body from the relative entitled thereto, is an actionable wrong for which substantial damages may be recovered. See *Kirse v*

89

*Jernigan,* 45 So.2d 188 *(FL 1950), Dunahoo v Bess,* 200 So.2d 541 (FL 1941), *Jackson v Rupp,* 228 So.2d 916, 918 (Fla. 4th DCA 1969).

Florida Appellate Courts have not been called upon to resolve a dispute between the decedent's next of kin as to which person is entitled to the deceased's remains for the purposes of burial disposition. The courts of New York, Missour, and Minnesota have been called upon to resolve this most delicate and important question in a sensitive balancing of the emotions of the parties. It appears the reported cases refer to a "settled doctrine" which, when one reads the cases, appears to be more unsettled among and between the several jurisdictions than settled. The following is a brief description of the ultimate resolutions reached by the several Appellate tribunals faced with the question: (1) The guiding principal paramount to all other considerations, is the wish of the decedent, with respect to the disposition of his or her remains, some courts have gone so far as to have the wishes of the decedent prevail over those of his spouse and children. (2) The spouse has a paramount authority to that of the next of kin if she is living with her husband at the time of his death, but such is not necessarily the case if an estrangement has occurred. See *Feller v Universal Funeral Chapel, Inc.,* 124 N.Y.S. 2d 546 (Sup. Ct., N.Y. 1953), *Petition of Forisi,* 10 N.Y. 2d 888 (Sup. Ct. N.Y. 1939), *Rosenblum v New Mt. Sinai Cemetery Association,* 481 S.W. 2d 593 (Mo. Ct. App. 1972).

Perhaps the most erudite explanation of the development of this area of law is set forth in the case of *Larson v Chase,* 50 N.W. page 238 (1891) wherein the appellate court stated in its opinion:

"Upon the questions who has the right to the custody of a dead body for the purpose of burial, and what remedies such person has to protect that right, the English common-law authorities are not very helpful or particularly in point, for the reason that from a very early date in that country the ecclesiastical courts assumed exclusive jurisdiction of such matters. It is easy to see, therefore, why the common law in its early stages refused to recognize the idea of property in a corpse, and treated it as belonging to no one unless it was the church. The repudiation of the ecclesiastical law and of ecclesiastical courts by the American colonies left the temporal courts the sole protector of the dead and of the living in their dead. Inclined to following the precedents of the English common law, these courts were at first slow to realize the changed condition of things, and the consequent necessity that they should take conguisance of these matters and administer remedies as in other analogous cases. This has been accomplished by a process of gradual develop-

ment, and all courts now concur in holding that the right to the possession of a dead body for the purposes of decent burial belongs to those most intimately and closely connected with the deceased by domestic ties, and that this is a right which the law will recognize and protect. The general, if not universal, doctrine is that this rights belongs to the surviving husband or wife or to the next of kin, and, while there are few direct authorities upon the subject, yet we think the general tendency of the courts is to hold that, in the absence of any testamentary disposition, the right of the surviving wife (if living with her husband at the time of his death) is paramount to that of the next of kin. This is in accordance, not only with common custom and general sentiment, but also, as we think, with reason. The wife is clearly nearer in point of relationship and affection than any other person. She is the constant companion of her husband during life, bound to him by the closest ties of love, and should have the paramount right to render the last sacred services to his remains after death. But this right is in the nature of a sacred trust, in the performance of which all are interested who were allied to the deceased by the ties of family or friendship, and, if she should neglect or misuse it, of course the courts would have the power to regulate and control its exercise. We have no doubt, therefore, that the plaintiff had the legal right to the custody of the body of her husband for the purposes of preservation, preparation, and burial, and can maintain this action if maintainable at all."

Based upon the above it is adjudged:

(1) Lora Steventon the widow is enjoined from removing the remains of the decedent from Palm Beach County, Florida, or disposing of the same in any manner whatsoever without first procuring approval of this court upon proper notice to the decedent's children. (2) Counsel shall seek a proper hearing for the presentation of evidence to this court for consideration and resolution.

DONE and ORDERED August 4, 1989, at West Palm Beach, Palm Beach County, Florida.