421 So.2d 798 (1982)
Gerald GOULD and Jerome H. Zwickel, Appellants,
v.
NATIONAL BANK OF FLORIDA, a National Banking Corporation, and Nbf Mortgage Corporation, Appellees.
No. 81-502.
District Court of Appeal of Florida, Third District.
November 16, 1982.
*799 Lapidus & Stettin, Miami, for appellants.
Levine, Reckson, Reed & Geiger, Miami, for appellees.
Before NESBITT, DANIEL S. PEARSON and FERGUSON, JJ.
FERGUSON, Judge.
Gerald Gould and Jerome Zwickel appeal an order setting aside jury verdicts entered in their favor. They raise four points as error, all of which challenge the propriety of granting a new trial. We affirm in part and reverse in part.
Appellees, the Bank and the Mortgage Company (NBF), are wholly owned subsidiaries of the National Banking Corporation which is controlled by Joseph Kanter, the board chairman and principal shareholder. In 1978, Gould approached Kanter to arrange financing for several shopping center projects on the west coast of Florida. At a meeting of July 25, 1978, held at the Bank, Kanter expressed to Gould and Zwickel a desire to participate in the project as a joint venture partner. Kanter instructed Zwickel to provide details of the projects for officers of the bank and mortgage company. Gould and Zwickel presented an operating budget to Kanter at this July, 1978 meeting and received from him assurances of a $25,000.00 line of credit for operating expenses, which debt, as appellants contend, was to be later assumed by one of Kanter's subsidiaries  either the bank or the mortgage company  which would be supplying operating overhead monies as its contribution to the venture. At Kanter's behest, Gould and Zwickel signed a letter at the time the loan was made agreeing to give the Bank a right of first refusal to make loans to the joint venture.
By October, 1978, Gould and Zwickel had used up the $25,000.00 in administrative and planning efforts. They refused to borrow more money from the Bank until Kanter fulfilled his promise to designate a venture partner and execute a joint venture agreement. In late October, Kanter authorized Park Jones, as President of NBF, to prepare and execute a "General Letter of Agreement" in which NBF would provide operating and equity funds as the joint venture partner.
The document signed by the parties provided in pertinent parts:
GENERAL LETTER OF AGREEMENT
This agreement shall serve the purpose of effecting an understanding between the following parties: Jerome H. Zwickel, Gerald H. Gould, and NBF Mortgage Corporation. The principal business engaged in will be the construction and operation (rental) of shopping centers.
The functions of the above parties are as follows:
J. Zwickel, assisted by G. Gould will select and contract for the sites, secure tenants, contract for the construction, and permanent financing which will be required in connection with the development of the shopping centers anywhere within the State of Florida.
NBF Mortgage Corporation in exchange for forty (40%) percent of the profits, shall either provide, arrange for, or "broker" the required development, construction monies for permanent financing at the then current market interest rate and fees. In the event NBF Mortgage Corporation is not able to obtain financing for any particular project, Zwickel and Gould can obtain financing elsewhere, but NBF Mortgage Corporation will still retain forty (40%) percent interest in the project.
NBF Mortgage Corporation shall provide one hundred (100%) percent of any equity and operating monies necessary; however, operation shall be limited to a total of $50,000.00 (total outstanding at any one time).
Refundable deposits will be advanced by NBF Mortgage Corporation and shall not be considered a part of operating capital. Any non-refundable deposits will only be advanced by NBF Mortgage Corporation upon their return approval.

*800 Equity money provided is to be repaid before any profit is distributed.
* * * * * *
This General Letter of Agreement will serve as our working understanding until NBF Mortgage Corporation attorneys compile an acceptable agreement which will comply with Federal Regulations which are applicable and acceptable to the Chairman of the Board of the National Bank of Florida who is the Chairman of the National Banking Corporation of Florida, Inc.
Agreed to and accepted this 26th day of October, 1978.
 /s/ 
 Gerald H. Gould
 /s/ 
 Jerome H. Zwickel
 /s/ 
 Park T. Jones, Jr.
 President
 NBF Mortgage Corporation
The General letter of Agreement was executed by Gould and Zwickel contemporaneously with a new $40,000.00 note to the bank which represented a renewal of the earlier $25,000.00 note and an additional advance of $15,000.00 for venture overhead capital. Zwickel returned to work on the projects and was ready to begin construction in late 1978 having been assured by Park Jones that funding was available.
During this same period Zwickel and Gould proposed to Kanter another business opportunity aside from the joint venture  the construction and long-term lease of a free standing restaurant in Tampa called "Dino's". Appellants made a $5,000.00 deposit toward purchase of the vacant land and allegedly received a verbal commitment from NBF, through Kanter, to advance $62,500.00 cash for the transaction. On the day before the scheduled closing NBF informed Gould and Zwickel that it would not provide the funds for the land purchase but instead produced an individual named Silverman to take NBF's position. After Silverman was unsuccessful in securing a loan to obtain the necessary $62,500.00, Gould personally borrowed that amount from Metropolitan Bank of Tampa and closed the land purchase deal. Gould contends that he personally borrowed the monies only after two conditions were met, (1) Silverman agreed to guarantee repayment of the monies borrowed by Gould within ninety days of the closing if a construction loan had not been funded, and (2) NBF agreed to assume Silverman's responsibilities if Silverman failed to perform. Silverman allegedly failed to perform and NBF refused to buy out Gould's interest. When this trial commenced two (2) years later, Gould, as owner of the land, had paid $18,000.00 in interest and still owed $62,500.00 to Metropolitan Bank.
Near the end of 1978 with the venture still in need of capital, appellee-Bank refused to advance more money for operating expenses unless Gould and Zwickel would acknowledge that they were personally liable for repayment; they refused.
In June, 1979, the Bank filed suit against Gould and Zwickel alleging that they failed to pay the balance of $38,234.58 remaining on the renewed note of October 25, 1978. Appellants by answer generally denied the allegations of the complaint. As affirmative defenses, Gould alleged estoppel and Zwickel alleged fraud in the making and obtaining of the promissory note. Simultaneously, appellants filed a third-party complaint against appellee NBF alleging that the General Letter of Agreement was a memorialization of Kanter's promise that the partnership would be responsible for up to $50,000.00 for operating expenses and that appellants would not be personally liable on the note. Appellants also claim in the third-party complaint that NBF breached an oral agreement, confirmed by telegram, to provide equity capital in the amount of $62,500.00 to purchase the parcel of land in Tampa. NBF answered the third-party complaint alleging that the intent of the General Letter of Agreement was to give the Bank a right of first refusal to finance development of projects to be selected by appellants, as to those projects which the Bank decided to finance, and since the Bank had decided not to finance *801 any of the projects presented to it by appellants  the condition precedent to its commitment  there was no obligation to provide monies to the venture. As to the third-party claim based on a failure of NBF to provide capital for purchase of land in Tampa, NBF alleges again that the telegram[1] establishes a condition precedent to any responsibility on its part to repay any of the sums borrowed by Gould from Metropolitan Bank of Tampa and the "complaint is absent any allegations of the occurrence of such conditions precedent".[2]
The case was tried by a jury for a week. At the commencement of the trial the Bank moved in limine to preclude Gould and Zwickel as defendants from offering parol evidence of any verbal agreement made at or before the execution of the note, and NBF moved in limine to preclude appellants from offering evidence of alleged misrepresentations as to the Tampa land purchase on grounds that that transaction was outside the scope of the joint venture agreement. The court did not expressly rule on the motions. Though appellants were permitted, over objection, to offer evidence of lost future profits, NBF's motion for directed verdict on that claim was granted and the jury was so instructed. At the close of appellant's case their motion to conform the pleadings to their proof with respect to the Tampa land purchase was granted over objection. A motion by NBF for a directed verdict on the fraud count of the third-party complaint and a motion by the Bank for a directed verdict as to its claim on the note were both denied. The case was submitted to the jury on all three claims: (1) the Bank's claim on the promissory note, (2) Gould and Zwickel's claim against NBF for breach of contract, (3) Gould and Zwickel's claim against NBF for fraud. A jury returned a general verdict in favor of Gould and Zwickel in the Bank's suit on the note, a $110,000.00 verdict in favor of Gould and Zwickel on their breach of contract claim against NBF Mortgage, and a finding of no fraud by NBF on the third-party complaint.
By order dated February 17, 1981 the court granted motions of the plaintiff Bank and third-party defendant NBF for a New Trial unless appellants agreed to reduce the verdict on their third-party complaint from $110,000.00 to $25,000.00.[3]
*802 First we examine the argument that the verdicts are inconsistent. By its verdict, which is buttressed by questions asked of the court,[4] the jury found no fraud on the part of NBF. From the general verdict entered in favor of appellants and against the Bank it cannot be determined which of the appellants' affirmative defenses were accepted by the jury  estoppel or fraud. Although the order appealed blurs any distinction that might exist as to the two affirmative defenses, they were pled separately. There is the possibility of inconsistency in the verdicts only if fraud is an essential element of estoppel, but the settled law is quite to the contrary. A fraudulent or willful intent to deceive is not essential to estoppel although in the absence of fraud there must be proof of misrepresentation or other affirmative deception. See Rinker Materials Corp. v. The Palmer First National Bank and Trust Company of Sarasota, 361 So.2d 156 (Fla. 1978); Hagen v. Florida Drug, Inc., 402 So.2d 57 (Fla. 4th DCA 1981); Armetta v. Clevetrust Realty Investors, 384 So.2d 55 (Fla. 4th DCA 1980). Obviously then the jury could have found the Bank estopped to collect on the promissory note because of a misrepresentation or other affirmative deception without fraud, which verdict would be quite consistent with the verdict on the third-party complaint finding a breach of contract but no fraud. Since there is a theory of law, supported by the evidence, upon which a jury could have rendered consistent verdicts a new trial should not have been granted. Kaplan v. Ciavarella, 349 So.2d 700 (Fla. 4th DCA 1977). A verdict is clothed with a presumption of regularity and is not to be disturbed if supported by the evidence. Rupp v. Pickford, 175 So.2d 72 (Fla. 3d DCA 1965). Further, any possible inconsistencies were obvious when the verdicts were returned, and could have been corrected or preserved for review by additional instructions and a special verdict form. Appellee's failure to object to the verdict  on issues not of a constitutional or fundamental character  constituted a waiver of defects contained therein. Robbins v. Graham, 404 So.2d 769 (Fla. 4th DCA 1981). The granting of a new trial on the Bank's claim must be reversed and, to the extent that inconsistency of verdicts is a basis for granting a new trial on appellants' breach of contract claim against NBF, it too must be reversed. We thus continue the examination to determine whether there is any other basis for granting a new trial on the third-party complaint.
The next two reasons stated as grounds for granting a new trial are inadmissible evidence as to profits and excessiveness of the damage award. It is also settled law that the function of a remittitur is to correct an improper verdict as to damages, Aronson v. Siquier, 318 So.2d 452 (Fla. 3d DCA 1975), and where the error is only that the damages awarded are excessive it is not proper to retry the issue of liability: remittitur or new trial on damages is the remedy. Ellis v. Golconda Corporation, 352 So.2d 1221 *803 (Fla. 1st DCA 1977); Parks v. Ralston Construction Co., 338 So.2d 65 (Fla. 3d DCA 1976); Aronson, 318 So.2d at 454; Dura Corporation v. Wallace, 297 So.2d 619 (Fla. 3d DCA 1974).
The fourth and final grounds[5] given in support of granting a new trial on liability are mere conclusory statements. A trial court must give express reasons which will support its finding that the verdict is either against the manifest weight of the evidence or was influenced by consideration of matters outside the record. Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145 (Fla. 1980). The purpose of the requirement is to facilitate intelligent review of the order granting a new trial where the appellate court is called upon to determine whether a trial judge has abused his discretion. Wackenhut Corporation v. Canty, 359 So.2d 430 (Fla. 1978); White v. Martinez, 359 So.2d 7 (Fla. 3d DCA 1978). Ordinarily the sound, broad discretion accorded trial judges in the granting of new trials should not be disturbed in the absence of a clear showing that it has been abused, Cloud v. Fallis, 110 So.2d 669 (Fla. 1959), but as is clear from all the cases, that discretion is subject to appellate scrutiny, Florida East Coast Railway Company v. Hanson, 355 So.2d 431 (Fla. 1978); Chicken Unlimited, Inc. v. Bockover, 374 So.2d 96 (Fla. 2d DCA 1979), exercise of which must find support in the record. Russo v. Clark, 147 So.2d 1 (Fla. 1962); White v. Martinez, 359 So.2d at 8. In this case we have reviewed the record and find that it fails to affirmatively demonstrate an impropriety of the verdicts or that the jury was improperly influenced by considerations outside the record. Laird v. Potter, 367 So.2d 642 (Fla. 3d DCA 1979).
In granting a remittitur or new trial the court concluded that the award of damages was excessive for the reason that the jury improperly included as elements of damage specific nonrecoverable sums. That finding will support a new trial on damages. Appellants have failed to make a clear showing that the court abused its discretion in this regard; thus the ruling will not be disturbed. Hodge v. Jacksonville Terminal Company, 234 So.2d 645 (Fla. 1970).
Insofar as the order appealed from grants a new trial on the Bank's suit on the promissory note, and a new trial as to liability on appellants third-party complaint for breach of contract, the order is REVERSED; as to a new trial on damages on the third-party complaint, the order is AFFIRMED.
Affirmed in part, reversed in part and remanded for further consistent proceedings.
NOTES
[1] NBF's telegram of December 18, 1978:
Gerald Gould
219 Mariner
Tampa, Fl. 33609

This is a confirmation copy of a previously phone-delivered telegram.
Pursuant to our agreement of today in the event G. Silverman fails to perform in accordance with the terms of his telegram to you on December 15, 1978 NBF Mortgage Corporation will assume the responsibilities of Silverman related to the transaction.
Park T. Jones Jr. President
Silverman had earlier acknowledged his obligation in a telegram of December 15, 1978:
Gerald Gould
219 Mariner
Tampa, Fl. 33609
This is a confirmation copy of a previously phone-delivered telegram.
We understand you are putting up the equity funds of $62,528.76. This money is being put up for the purchase of a certain parcel of land in Tampa Florida which I understand has been leased to Dino's. This is to confirm our understanding that this money is being put up in lieu of my own check and we will guarantee this money to you if this deal falls. If at the end of 90 days a construction loan is not funded we will return the money to you.
 Silverman Investment Inc.

[2] Silverman did offer construction financing to Gould on terms which required a loan of $150,000.00 at either 15% interest and 11 points, or 15% interest and 50% of the equity in the deal. The offer was rejected by Gould as being no more than an excuse for nonperformance by Silverman.
[3] The court's stated reasons for granting a new trial are:

(1) The verdicts of the Jury on the Claim of National Bank of Florida against Mr. Gould and Mr. Zwickel and the claim of Mr. Gould and Mr. Zwickel against NBF Mortgage Corporation were inconsistent with one another, in that the jury implicitly found that there was no fraud by NBF Mortgage Corporation and yet denied recovery to National Bank of Florida based upon fraud, or estoppel grounded in fraud, although the acts and conduct complained of and the persons involved were the same in both instances.
(2) The Jury was permitted to hear and was improperly influenced by inadmissible evidence of profits claimed to have been lost by Mr. Gould and Mr. Zwickel, and by evidence of other damages claimed, which evidence consisted of approximations and guess work.
(3) In viewing the evidence in a light most favorable to Mr. Gould and Mr. Zwickel, and considering the substantial justice of the case, it is clear that the $110,000.00 verdict in favor of Mr. Gould and Mr. Zwickel against NBF Mortgage Corporation exceeds by at least $85,000.00 the maximum amount recoverable under the proof adduced at trial. The amount of the verdict on the third party claim could only have been arrived at by the improper inclusion of punitive damages and the sum borrowed by Mr. Gould and Mr. Zwickel to buy the Dino's property, or other non-recoverable sums.
(4) The verdicts of the Jury evince passion, prejudice, or gross mistake, that the Jury was misled or deceived as to the force or creditability [sic] of the evidence, that the jury was influenced by considerations outside the record, or that the Jury was otherwise improperly influenced. The verdicts are contrary to the manifest weight of the evidence and the substantial justice of the case.
[4] In the course of their deliberations, the jury submitted to the court two questions: (1) who owned the Dino's property and (2) whether punitive damages could be assessed if no fraud were found. To the first question the jurors were instructed to rely on their collective memory. As to the second question they were instructed that no punitive damages could be assessed in the absence of fraud.
[5] Appellees argue that the decision to grant a new trial could also be based on an error committed by the trial court in admitting parol evidence to contradict the written terms of the promissory note, citing Airlift International, Inc. v. Boyd, 280 So.2d 57 (Fla. 3d DCA 1973) and Jonat Properties, Inc. v. Gateman, 226 So.2d 703 (Fla. 3d DCA 1969). The argument and authorities are inapplicable. In this case parol evidence was properly admitted to connect two written instruments and show that they were parts of a single transaction. Saco Development, Inc. v. Joseph Bucheck Construction Corporation, 373 So.2d 419 (Fla. 1st DCA 1979); Northwestern Bank v. Cortner, 275 So.2d 317 (Fla. 2d DCA 1973).