471 So.2d 163 (1985)
Ursula H. SMITH, Appellant,
v.
TELOPHASE NATIONAL CREMATION SOCIETY, INC. d/b/a National Cremation Society and American Insurance Company, Appellees.
No. 84-515.
District Court of Appeal of Florida, Second District.
June 14, 1985.
*164 Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, and Patrick Dekle of Law Offices of Patrick Dekle, Tampa, for appellant.
Gerald E. Rosser of Gerald E. Rosser, P.A., Miami, for appellees.
CAMPBELL, Judge.
Appellant, Ursula H. Smith, appeals the trial court's order granting appellees', Telophase National Cremation Society, Inc. and American Insurance Company, motion for remittitur or, in the alternative, granting appellees' motion for new trial. While the order appealed from simply provides that appellees' motion for new trial will be granted in the event that the remittitur is rejected, it is clear from the record that the new trial was to be to both issues of liability and damages.
In her appeal, appellant raises three points of alleged error. The first point addresses the question of whether the trial judge erred in ordering a new trial on liability on the sole grounds that he found that both the compensatory and the punitive damages awarded by the jury were excessive. The second point questions whether the trial judge erred in granting a new trial on the grounds that the compensatory damages awarded were excessive. The third point questions whether or not the trial court erred in ordering a new trial on the grounds that the punitive damages awarded were excessive.
Appellees have filed a cross appeal in which they raise two points. Their first point is whether the trial judge erred in admitting evidence of appellees' past conduct. Their second point concerns the possibility of error in the trial judge's denial of their motion for directed verdict on appellant's claim for intentional infliction of mental distress. We reverse the trial *165 judge on the first two points raised in appellant's appeal. On appellant's third point, we affirm the remittitur or the alternative order for a new trial, but we limit any such new trial to the issue of damages only on the punitive damage claim. We affirm the trial judge in regard to the points raised in appellees' cross appeal.
Appellant's action below sought compensatory and punitive damages against appellees, alleging breach of contract, negligence and intentional infliction of mental distress. Utilizing a special verdict form, the jury found that the officers, directors, managers or employees of the appellee Telophase National Cremation Society intentionally inflicted emotional distress upon appellant which was the legal cause of damages to her; that there was a breach of contract committed by appellee against appellant which was a legal cause of her damages, and that there was negligence on the part of appellee toward appellant which was a legal cause of her damages. In assessing appellant's damages, the jury awarded her $250,000 in compensatory damages and a total of $1,250,000 in punitive damages as a result of the acts of the officers, directors, managers or employees of the appellee.
The order of the trial judge appealed from herein ordered a remittitur of the compensatory damage award in the amount of $150,000, and a remittitur of the punitive damage award of $1,050,000, resulting in a reduced award of compensatory damages of $100,000, and a reduced award of punitive damages of $200,000.
In light of the verdict in appellant's favor, we must assume that all disputes of fact were resolved and all reasonable inferences were drawn in her favor. The facts show that appellant and her husband were married in 1959. In 1980, Mr. Smith discovered that he had incurable cancer. He requested that his body be cremated upon his death, and a contract was entered into with the appellee Telophase for that purpose. He had specifically instructed appellant that he did not want his ashes scattered at sea because he shuddered at the thought of fish eating his remains. Mr. Smith died on February 13, 1981, at the time when appellant, Mr. Smith's sole heir, was forty-eight years old. No children had been born of their marriage. Appellant telephoned appellee Telophase immediately following Mr. Smith's death, yet it was some four to five hours before they arrived to remove his body from her home. The cremation also was not performed until five or six days later and that delay, according to appellant, caused her to have graphic nightmares.
Some six or seven days after Mr. Smith's body was supposed to have been cremated, appellant went to appellee's place of business to pick up her husband's ashes. Appellee's business manager was unable, at first, to locate Mr. Smith's ashes where she thought they should have been, and after having excused herself for a while, returned with an unlabeled plastic container of ashes which she represented to be those of Mr. Smith. Appellant took the ashes and started out on what she described as a pilgrimage with the intent to scatter some of her husband's ashes at each of several spots that had had particular meaning to either him or to the two of them during their marriage. She intended finally to bury the remainder of his ashes in their joint cemetery plot where, at the time of her death, her ashes could be buried and commingled with those of her husband's.
In carrying out her proposed pilgrimage, she first traveled to Daytona Beach where she and her husband had first met and scattered some of his ashes there; she next drove to Chapel Hill, North Carolina, where she scattered some of his ashes at his college and, finally, she drove to the farm in Maryland where her husband and his family had been raised. It was at this point, while scattering some of the ashes at the family farm that she found remains of some dental bridge work in the urn. According to appellant and to Mr. Smith's dentist, Mr. Smith had no bridge work. At this point, appellant realized she had been given someone else's remains. Appellant testified that as a result of being given *166 ashes other than those of her husband, she suffered severe emotional and physical consequences for which she required medical attention.
The testimony at trial indicated that sometime after appellant picked up the ashes represented to be those of her husband, Mr. Smith's ashes had, in fact, been distributed at sea by appellee, which was contrary to his specific instructions. Without going further into the facts, the evidence presented at trial concerning the manner in which appellee conducted its business, and the manner in which it handled Mr. Smith's body and his remains, were such as to enable the jury to determine that appellees had engaged in extreme and outrageous conduct.
We find it would be helpful to address appellees' points raised in their cross-appeal first. The first point on cross-appeal concerns whether there was error in admitting evidence of appellee's past conduct, practices and policies in regard to the cremation and mixing of ashes of deceased persons. We find that there was no error in the admission of such evidence because evidence of such previous conduct would have a bearing on whether or not appellee's conduct could be categorized by the jury as extreme and outrageous.
Appellees' second point on their cross-appeal is whether the trial judge erred in denying their motion for directed verdict on appellant's claim for intentional infliction of mental distress. Since we do resolve, in light of the verdict, all disputes of fact in appellant's favor, in addition to resolving all reasonable inferences in her favor, we conclude, as we stated, that it was within the province of the jury to find that the facts, and proper inferences from the facts, establish that appellee's conduct was extreme and outrageous.
Our supreme court in Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277 (Fla. 1985), has specifically recognized the tort of intentional infliction of emotional distress. In doing so, it approved Restatement (Second) of Torts § 46 (1965) as the appropriate definition of that tort. Paraphrased section 46 of the restatement provides that one who, by extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. In the restatement's comment on "extreme and outrageous conduct," the authors explain that:
Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
Restatement (Second) of Torts § 46 at 73 (1965).
We cannot say that the evidence in this case does not support such a finding by the jury. We therefore affirm the trial judge in regard to appellees' cross-appeal.
We next turn to the points raised by appellant in her appeal. The first of those points that we address, is whether the trial judge erred in ordering a new trial on the issue of liability and damages as an alternative to a remittitur of both the compensatory and punitive damage award.
We must first make clear that we are not concerned here with a remittitur (or additur) as is provided for in either section 768.043 or section 768.49, Florida Statutes (1980). Those sections have to do only with actions for damages for personal injury or wrongful death arising out of the operation of a motor vehicle or medical malpractice. In both those statutes, remittitur (or additur) is provided as an alternative to a new trial on damages only where liability has been found to exist.
It seems to us also that a remittitur should be ordered in other cases only as a remedy for excessive damages and not where the trial judge questions the finding of liability. Since a trial court now, since the adoption of Florida Rule of Civil Procedure *167 1.530(a), clearly has authority to order a new trial on any or all issues where there is lack of sufficient evidence to support the verdict on the questioned issues, it seems contradictory, on the one hand, to order a remittitur (thereby recognizing liability) and, on the other hand, order a new trial on all issues if the remittitur is rejected.
The function of a remittitur is to reduce damages when liability is clearly established. While the resolution of this issue seems clear to us, our research reveals that only the Third District Court of Appeal has directly and concisely addressed the issue. In the cases of St. Pierre v. Public Gas Co., 423 So.2d 949 (Fla. 3d DCA 1982), Gould v. National Bank of Florida, 421 So.2d 798 (Fla. 3d DCA 1982) and Parks v. Ralston Construction Co., 338 So.2d 65 (Fla. 3d DCA 1976), it has clearly been held that when a remittitur is ordered, the alternative to the remittitur should be a new trial on the issue of damages alone. The clearest statement comes in the Gould case where Judge Ferguson points out that the function of a remittitur is to correct an improper verdict as to damages, and where the error is only that the damages awarded are excessive, it is not proper to retry the issue of liability. 421 So.2d at 802.
While this issue was not so precisely presented, it is clear that this court also has previously come to the same conclusion in Reynolds v. Towne Management of Florida, Inc., 426 So.2d 1011, 1012 (Fla. 2d DCA 1983), where Judge Scheb, writing for this court, said "since the court ordered a remittitur, we perceive it concluded only that the damages awarded were excessive, and not that Reynolds failed to establish the landlord's liability." While a remittitur was not involved in Taylor v. Ganas, 443 So.2d 251 (Fla. 1st DCA 1983), the same principle was involved when the court held that the trial court, absent a finding that the evidence was insufficient to support liability, erred in ordering a new trial on the issue of liability and damages when the only error was in regard to the damages. See also Young v. State, 305 So.2d 307 (Fla. 3d DCA 1974).
A different rule, of course, prevails where there is such an insufficiency of the evidence as to cause it to be proper to grant a new trial, and the insufficient evidence is so closely intertwined with the dual issue of liability and damages as to require a new trial on both. Roemelmeyer v. Richard A. Marshall Insurance Agency, 223 So.2d 753 (Fla. 3d DCA 1969). In that instance, of course, it would not be proper to order a remittitur since the intertwined evidence was insufficient both as to liability and as to damages. Since Florida generally does not recognize additurs, except as provided in sections 768.043 and 768.49[1], the rule, therefore, is also different when a verdict for damages is inadequate and the result of the inadequacy may have come about as a result of compromise by the jury on the issue of liability. 1661 Corporation v. Snyder, 267 So.2d 362 (Fla. 1st DCA 1972).
In reaching our conclusion on this issue, we were at first caused some concern by the apparent approval in Jenkins v. Arab Termite & Pest Control, 422 So.2d 922 (Fla. 2d DCA 1982), of the trial court's grant of a new trial as to all issues unless a remittitur had been agreed to reducing the amount of punitive damages. That case grew out of the earlier appeal to this court in Jenkins v. Arab Termite & Pest Control of Florida, Inc., 388 So.2d 44 (Fla. 2d DCA 1980) that was subsequently reversed by the supreme court in Arab Termite & Pest Control v. Jenkins, 409 So.2d 1039 (Fla. 1982). The only issue decided in the first appeal to this court and the subsequent decision of the supreme court, involved the application of the rule announced in Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978).
In a close reading of those cases and a consideration of the record, it is clear in the first Arab Termite appeal to this court, *168 this court reversed the trial court on ordering a remittitur of punitive damages based on an interpretation of Wackenhut and never reached the issue as to whether it was proper to order a remittitur or, in the alternative, a new trial on all issues. When the supreme court accepted jurisdiction, it also only reviewed the issue of the application of Wackenhut and did not consider the issue before us in this appeal. Likewise, on the remand to this court, this court in the second appeal did not address that issue, although the motion for rehearing raised some question about it.
The cases cited in the second Arab Termite appeal in this court on the denial of the motion for rehearing no longer have any application to this issue. The supreme court in Remsberg v. Mosley, 58 So.2d 432 (Fla. 1952) and Porter v. Gordon, 46 So.2d 19 (Fla. 1950), which Remsberg relies on, both dealt with the lack of authority of a trial court to divide the issues of liability and damages in ordering a new trial. However, those cases were decided before the supreme court adopted Florida Rule of Civil Procedure 1.530(a), which, as we have observed, authorizes a new trial on all or a part of the issues.
In the other cases cited in this court's second Arab Termite case on the denial of the motion for rehearing, there were clearly distinguishing circumstances presented that are not pertinent to the issue we are now considering. In Lawson v. Swirn, 258 So.2d 458 (Fla. 1st DCA 1972), a remittitur was not involved. On the contrary, the trial court there set aside a jury verdict for the defendant, directed a verdict for the plaintiff on the issue of liability and granted a new trial on the issue of damages alone. There, the court held that the evidence as to both issues was so inextricably interlaced that the new jury should consider both the issue of liability and the issue of damages.
In Shank v. Fassoulas, 304 So.2d 469 (Fla. 3d DCA 1974), the issue there involved the situation we have previously discussed of liability being found on the part of the defendant, but no damages being assessed on behalf of the plaintiff. Since an award of no damages was inadequate if liability existed, a new trial on both the issue of liability and damages was proper since the jury could have awarded an inadequate damage amount due to its concern over the liability of the defendant. We have previously discussed the 1661 Corporation case, in regard to this issue, as it also involved an award of inadequate damages and resulted in a new trial on all issues.
Therefore, we conclude, in regard to appellant's first point on appeal, that the trial judge erred in ordering a new trial on the issues of liability and damages as an alternative to the rejection of a remittitur, and we reverse on that ground.
Appellant's second point on appeal is that the trial judge erred in granting a new trial on the ground that compensatory damages awarded by the jury were excessive. In examining this issue, as will be true in regard to appellant's third and final issue, we must look to the order of the trial judge to determine whether or not it is sufficient to sustain the order of remittitur or a new trial as it pertains to compensatory damages.
In the order appealed from, the trial judge specifically finds that the jury was not influenced by matters outside of the record. He did find that the verdict was shocking to the judicial conscience and "based upon the entire record before the jury, the court can only conclude that the awards assessed against the defendants were based upon obvious prejudice of the jury against the defendants and their sympathy for the plaintiff." The trial judge then finds that the verdict was against the manifest weight of the evidence as to both compensatory and punitive damages. However, he cites no reasons for the stated conclusion and cites no specifics in the record to support the ultimate conclusion.
Since appellant's damages grow out of the newly recognized tort of intentional infliction of emotional distress, they are by their very nature difficult, if not impossible, *169 to measure. For the trial judge to state a mere conclusion that it is contrary to the manifest weight of the evidence or that it is shocking to the judicial conscience without showing specifics, when six jurors have found otherwise, we think is error. As Judge Mills points out in Taylor v. Ganas, the only thing that plainly appears from that order granting the new trial is that the trial judge felt that the compensatory damage award was excessive. Quoting Judge Mills, "Because the order fails to state the reasons for granting a new trial on these issues with sufficient clarity to facilitate intelligent appellate review, it must be reversed as to these issues." 443 So.2d at 253.
Judge Mills, in Taylor v. Ganas, relies upon the often cited and leading case in this field of Wackenhut Corp. v. Canty that was also the controlling case in the Arab Termite case. Several quotations from Wackenhut are appropriate to our conclusion in this case. "In this case, the order granting new trial offered no explanation of what triggered the trial court's judicial shock at the size of the verdict." 359 So.2d at 433.
In addition, the order in this case does not point to the record for support of the trial court's determination that $50,000 of the $180,000 punitive damage award was proper but the excess was not. In requiring the entry of a remittitur to correct an excessive verdict the rule is that the amount of the excess must clearly appear from the record.
... .
Although an order for new trial need not incant language to the effect that the verdict is against the manifest weight of the evidence or was influenced by considerations outside the record, the order must give reasons which will support one of these two conclusions so that it will be susceptible of appellate review.
359 So.2d at 434-435.
As the supreme court, in its Arab Termite decision, held in reliance on Wackenhut:
[A] trial judge may not substitute its judgment for that of the jury on the matter of damages and may enter an order of remittitur or new trial only when the record affirmatively shows the jury's verdict to be excessive or when the judge makes specific findings concluding that the jury was influenced by something outside the record.
409 So.2d at 1041.
On our examination of the record in this case, we cannot find evidentiary support for the position that the verdict on compensatory damages was excessive. Neither does the trial judge point to the record to support his conclusions. See Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145 (Fla. 1980).
The third and final issue raised by appellant in her appeal is whether the trial court erred in granting a motion for a new trial as an alternative to a remittitur on the grounds that the punitive damages awarded by the jury were excessive.
We find that the trial judge was correct in ordering a remittitur of the punitive damages, but should have, in the alternative, ordered a new trial on the issue of the amount of punitive damages alone. However, in so finding, we conclude as we did in the issue on compensatory damages that the trial judge has not supported his reasons for the remittitur by references to the record. However, on our examination of the record, we do find that the verdict of $1,250,000 in punitive damages would be so large as to virtually bankrupt the corporate appellee.
Shortly after this lawsuit was instituted by appellant below, appellee, Telophase National Cremation Society, Inc., entered into an agreement with another corporation to sell all of its assets except its land. This was clearly a sale of assets and not a sale of stock, and part of the agreement was that appellee would change its corporate name so that the purchasing corporation could continue to use the name National Cremation Society. The consideration for the purchase of the assets was $900,000. The land owned by the appellee corporation *170 was excluded from the sale and we do not know the precise value of that land, although there is some evidence that it did not exceed $100,000. There is no evidence offered to show that this sale of assets was a fraudulent sale or was less than an arms-length sale. Therefore, the only evidence in the record as to the assets of the appellee corporation show a net worth of approximately $1,000,000.
Accordingly, on the face of the record as we have it, punitive damages in an award of $1,250,000 would clearly bankrupt the corporation. It is error for a punitive damage award to be in an amount which will result in economic castigation or bankruptcy of the defendant. Wackenhut v. Canty; Bould v. Touchette, 349 So.2d 1181 (Fla. 1977); Lehman v. Spencer Ladd's, Inc., 182 So.2d 402 (Fla. 1965); Hoy v. Poyner, 305 So.2d 306 (Fla. 2d DCA 1974); Joab, Inc. v. Thrall, 245 So.2d 291 (Fla. 3d DCA 1971). See also Rinaldi v. Aaron, 314 So.2d 762 (Fla. 1975).
We therefore conclude, in regard to appellant's third issue, that the trial judge was correct in ordering a remittitur of $1,050,000 in punitive damages, leaving a total punitive damage award of $200,000. However, he was in error in ordering together the remittitur of the punitive damage award and the compensatory damage award or, in the alternative, a new trial on all issues. By ordering a remittitur instead of granting a new trial on punitive damages, the trial judge recognized that the evidence supported the jury's conclusion that appellant was entitled to some amount of punitive damages. His concern was that the jury's award was excessive. Therefore, the alternative to the remittitur on punitive damages should have been a new trial on the amount of punitive damages only.
We reverse the trial judge on the order of a remittitur in regard to the compensatory damages and, on remand, the trial judge shall reinstate the compensatory damage award in the full amount of $250,000. We also reverse, in regard to the remittitur on punitive damages, insofar as the rejection of it would require a new trial on both the issue of liability for and the amount of punitive damages. On remand, since the trial judge has previously determined that a remittitur of $1,050,000 of punitive damages would be appropriate, thereby leaving a punitive damage award of $200,000, he shall again order a remittitur of $1,050,000 in the total punitive damage award, reducing punitive damages to $200,000. In the alternative, in the event of a rejection of the remittitur on punitive damages, he shall order a new trial on the issue of the amount of punitive damages alone. If a rejection of the remittitur results in a new trial on the amount of punitive damages evidence of the entire conduct of appellee would be admissible and relevant. This is necessary in order for the jury to properly determine the amount of damages since the punitive damage award would be related to the degree of outrageousness of the conduct of appellee.
We therefore, in regard to appellant's appeal, reverse in part and affirm in part and remand with instructions. In regard to appellees' cross-appeal, we affirm the trial judge.
SCHOONOVER, J., concurs.
GRIMES, A.C.J., concurs specially.
GRIMES, Acting Chief Judge, concurring specially.
The denial of the motion for rehearing in Jenkins v. Arab Termite & Pest Control, 422 So.2d 922 (Fla. 2d DCA 1982), created no precedent because we simply referred to a series of cases. See Dodi Publishing Co. v. Editorial America, 385 So.2d 1369 (Fla. 1980). Moreover, those cases were not applicable to the issues before us because none of them involved the granting of a remittitur.
NOTES
[1] Bennett v. Jacksonville Expressway Authority, 131 So.2d 740 (Fla. 1961); Sarvis v. Folsom, 114 So.2d 490 (Fla. 1st DCA 1959).