STEVENSON, J.
This is an appeal from an order granting summary judgment for the defendant on a multi-count complaint which arose out of an employer-employee relationship turned sour. Appellants, the owners of a company which had previously employed appel-lee, Barry Nevins, alleged that Nevins stole money from the company and forged their names onto stock certificates, giving him an interest in the company. Appellants further alleged that Nevins negligently contributed to the untimely death of one of his former employers, Joyce Donigan, by tampering with her intravenous apparatus and improperly giving her non-prescribed medications while she was hospitalized for cancer treatments. Appellants allege that Nevins’ misdeeds continued even after Joyce Donigan’s death from cancer, when he forged her mother’s signature on an authorization form which caused her to be cremated against her wishes and those of her family. Because genuine issues of fact exist with regard to at least some of the claims, we reverse the summary judgment in part.
Donigan Nutrition Center (DNC) was incorporated in 1994 under the ownership of Joyce Donigan and her mother, Jane Donigan. At the end of 1995 or early 1996, Nevins came to work for Joyce Doni-gan at DNC. Nevins was originally hired at an hourly rate, but soon became a salaried employee. Nevins began to spend more time at the DNC store as Joyce Donigan’s health declined due to breast cancer and forced her to miss work.
Joyce Donigan was admitted to Boca Raton Hospital in February 1998, and passed away on March 14, 1998. Allegedly, during her final hospitalization, Joyce Donigan sold Nevins 300 shares of DNC corporate stock for $3,0Q0, and transferred her remaining shares to Jane Donigan. Appellants allege, however, that Joyce Do-nigan did not actually sell the stock to Nevins, but rather that Nevins forged Joyce’s and Jane’s signatures on the stock certificates. Nevins was fired from DNC in June of 1998.
During her hospitalization for breast cancer, Nevins allegedly gave Joyce Doni-gan injections of Anvirzel, a drug used for alternative cancer treatment, and increased her intravenous morphine drip without authorization, both of which allegedly accelerated her death. Later, after Joyce’s death, Nevins is alleged to have forged Jane Donigan’s name onto an authorization form for Joyce Donigan’s cremation.
• On January 26, 1999, appellants filed an amended complaint against Nevins, seeking damages for the alleged criminal practices pursuant to chapter 772, Florida Statutes (1999), in counts I and II; count III alleged civil theft; count IV was a conversion claim; count V was a wrongful death claim; count VI alleged tortious interference with the disposition of a dead human *575 body. Ultimately, the trial judge granted summary judgment in favor of the defendant on all counts.

Civil theft and conversion

We reverse the entry of summary judgment on counts III and IV, civil theft and conversion, respectively, insofar as they concern the theft of DNC stock certificates and Nevins’ forgery of Joyce and Jane Donigans’ names onto the stock certificates. From our review of the record, we conclude that genuine issues of fact remain as to whether the signatures on the stock certificates were forgeries.[1]

Wrongful death

We reverse the summary judgment as to the wrongful death claim in count V. The trial court apparently granted the summary judgment because the probate court had denied Jane Donigan’s claim that Nevins should not be entitled to any benefits under Joyce Donigan’s will based on the so-called. Slayer Statute, which states:
A surviving person who unlawfully and intentionally kills or participates in procuring the death of the decedent is not entitled to any benefits under the will or under the Florida Probate Code, and the estate of the decedent passes as if the killer had predeceased the decedent.
§ 732.802(1), Fla.Stat. (1999). The trial judge determined that the Slayer’s Act did not apply since the evidence indicated that Joyce Donigan died from cancer. We find that the conclusion in the probate court does not control here. First, the Slayer’s Act requires an intentional act, here, appellants claim both an intentional act on the part of Nevins and, in the alternative, negligence. Second, appellants concede that it was the cancer which ultimately caused the death of Joyce Donigan, but allege that Nevins’ actions hastened and accelerated the moment of her death. Several people testified that they saw Nev-ins inject Joyce with a drug that they later discovered was an alternative drug for cancer treatment. Deposition testimony also revealed that several people claimed to have seen Nevins tamper with Joyce’s morphine drip. We find that genuine issues of material fact exist as to whether Nevins’ actions were a proximate cause of accelerating Joyce Donigan’s untimely death.

Tortious interference with rights involving dead human bodies

Lastly, we reverse the summary judgment as to count VI, tortious interference with rights involving dead human bodies. To state a cause of action for the intentional infliction of emotional distress, a complaint must allege facts which, if proven, would also support an award of punitive damages. See Rupp v. Jackson, 238 So.2d 86 (Fla.1970); Kirksey v. Jernigan, 45 So.2d 188 (Fla.1950). These decisions have recognized such a cause of action in a variety of factual situations involving the care of dead bodies and are exemplified by the following statement set out in Kirksey:
The right to recover, in such cases, is especially appropriate to tortious interference with rights involving dead human bodies, where mental anguish to the surviving relatives is not only the natural and probable consequence of the character of wrong committed, but indeed is frequently the only injurious consequence to follow from it.
Id. at 189.
Appellee contended that appellants’ argument should fail because claims of tor- *576 tious interference with rights involving dead human bodies are proper only as against funeral homes. We disagree with that argument since “Florida cases have recognized causes of action based upon interference with a dead relative’s body in a variety of circumstances where the underlying conduct alleged rises to the level of intentional misconduct or malice.” Crocker v. Pleasant, 778 So.2d 978, 987 (Fla.2001) (citing Kirker v. Orange County, 519 So.2d 682, 684 (Fla. 5th DCA 1988) (right of action for mutilation of dead body based on right of next of kin to bury body in an unmutilated condition); Smith v. Telophase Nat’l Cremation Soc’y, Inc., 471 So.2d 163, 165 (Fla. 2d DCA 1985) (intentional infliction of mental distress for failure to properly dispose of decedent’s ashes); Sherer v. Rubin Mem’l Chapel, Ltd., 452 So.2d 574, 575 (Fla. 4th DCA 1984) (holding that relatives of deceased alleged facts sufficient to impute malice in mishandling of corpse); Scheuer v. Wille, 385 So.2d 1076, 1078 (Fla. 4th DCA 1980) (claim of intentional infliction of emotional distress for unauthorized embalming precluded entry of summary judgment for funeral home)).
Jane Donigan denies that it was her signature on the authorization for cremation form. According to section 470.0255, Florida Statutes, “[a] cremation may not be performed until a legally authorized person gives written authorization for such cremation.” Jane Donigan contends that her signature on this crucial authorization form was forged by Nevins. Nevins asserted his Fifth Amendment right to remain silent when questioned about the signatures on the authorization for cremation form; thus, genuine issues of fact were in dispute as to whether Nevins forged Jane Donigan’s name on the authorization form. See Atlas, 708 So.2d at 299. If Nevins did forge Jane Donigan’s name, a jury could conclude that he interfered with the disposition of Joyce Donigan’s body.
We have considered the other issues raised in this appeal and find no error. Accordingly, this cause is reversed and remanded for proceedings consistent with this decision.
GROSS and HAZOURI, JJ., concur.

. We affirm the summary judgment as to counts I and II.