NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, )
                              )
        Appellant, )
                              )
v. )       Case No. 2D14-2611
                              )
ARTHUR L. BREWER and )
BARBARA J. BREWER, )
                              )
        Appellees. )
_____ )
                              )
WILLIAM EDWARD GOELLNER, )
                              )
        Appellant, )
                              )
v. )       Case No. 2D14-2685
                              )
ARTHUR L. BREWER and )
BARBARA J. BREWER, )       CONSOLIDATED
                              )
        Appellees. )
_____ )

Opinion filed May 4, 2016.

Appeals from the Circuit Court for Polk
County; J. Dale Durrance and Catherine L.
Combee, Judges.

Anthony J. Russo and Jared M. Krukar of
Butler Weihmuller Katz Craig LLP, Tampa,
for Appellant State Farm Mutual Automobile
Insurance Company.

Mark D. Tinker, Charles W. Hall, and
DeeAnn Petika McLemore of Banker Lopez
Gassler, P.A., St. Petersburg, for Appellant
William Edward Goellner.

Joel D. Eaton of Podhurst Orseck, P.A.,
Miami; Brennan, Holden & Kavouklis, P.A.,
Tampa; and The Brooks Law Group, Winter
Haven, for Appellees.

VILLANTI, Chief Judge.

In these consolidated appeals, William Edward Goellner and his insurer, State Farm Mutual Automobile Insurance Company (collectively Goellner), seek review of the final judgment entered in favor of Arthur L. and Barbara J. Brewer in this personal injury case arising from an automobile accident. We affirm the final judgment in favor of the Brewers to the extent that it awards them compensatory damages without discussion of the issues raised by Goellner relating to these awards. However, because the punitive damages award is excessive to the point of being unconstitutional, we must reverse that award and remand for further proceedings.

Goellner and Arthur Brewer were involved in an automobile accident in the early morning hours of November 30, 2008. The evidence was undisputed that Goellner—a physician—fell asleep at the wheel, thus causing the accident. The disputed evidence concerned the extent of Mr. Brewer's injuries and why Goellner fell asleep. Goellner testified that he was simply tired after a long day. However, the Brewers presented some evidence that Goellner had taken prescription sleeping medication before setting out on the three-hour drive from The Villages to Sebring. On

the basis of the medication evidence, the Brewers sought leave to seek punitive damages, which the trial court granted. Goellner did not appeal that ruling.

At Goellner's request, the trial court bifurcated the trial. The jurors first heard evidence concerning the accident and Mr. Brewer's injuries. At the conclusion of that part of the trial, the jurors were asked to return a verdict on the issues of whether the Brewers were entitled to compensatory damages; if so, the amount of such damages; and whether the Brewers were entitled to an award of punitive damages. The jury returned a verdict awarding Mr. Brewer $628,697.61 and Mrs. Brewer $109,500 in compensatory damages, and it found that the Brewers were entitled to an award of punitive damages.

The second part of the trial then addressed the amount of punitive damages. The Brewers presented no additional evidence in this portion of the trial and asked only for the jurors to award an amount that was appropriate to punish Goellner. In turn, Goellner testified that he had approximately $300,000 in bank and retirement accounts and a vehicle worth approximately $500. He testified that he did not own any other assets. He also testified that he owed approximately $16,000 in taxes, making his net worth $284,000. He then testified to his monthly income and expenses. The Brewers did not specifically controvert any of this evidence. In argument, while Goellner conceded that the jurors were entitled to award punitive damages, he asserted that any punitive damages award should not be so large as to financially devastate him. Despite this argument, the jury returned an award of punitive damages in the amount of $284,000—or 100% of Goellner's net worth. Goellner filed a motion for remittitur or new

trial, which the trial court denied. The court then entered final judgment against Goellner for the full amount of the jury's verdict.

In this appeal, Goellner argues that the award of punitive damages is so large as to be unconstitutional. The purpose of an award of punitive damages is "to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568 (1996). While the amount of punitive damages necessary to accomplish these aims is generally left to the discretion of the jury, "the imposition of a punitive damage award is subject to constitutional limitations because '[t]he Due Process Clause of the Fourteenth Amendment prohibits a state from imposing a "grossly excessive" punishment on a tortfeasor.' " R.J. Reynolds Tobacco Co. v. Townsend, 90 So. 3d 307, 312-13 (Fla. 1st DCA 2012) (quoting BMW, 517 U.S. at 562); see also R.J. Reynolds Tobacco Co. v. Martin, 53 So. 3d 1060, 1071-72 (Fla. 1st DCA 2010) (quoting Cooper Indus., Inc. v Leatherman Tool Grp., 532 U.S. 424, 433-34 (2001)). This court reviews "a trial court's determination as to whether a punitive damage award exceeds the boundaries of due process . . . de novo." Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1263 (Fla. 2006) (citing Cooper Indus., 532 U.S. at 436).

When determining whether a specific punitive damages award is "grossly excessive" for constitutional purposes, the court must consider whether "the award is out of proportion to the defendant's net worth." Arab Termite & Pest Control of Fla., Inc. v. Jenkins, 409 So. 2d 1039, 1043 (Fla. 1982). Proportionality is assessed by determining whether the award "bears some relationship to the defendant's ability to pay and does not result in economic castigation or bankruptcy of the defendant." Engle,

- 4 -

945 So. 2d at 1263-64. The award "should be painful enough to provide some retribution and deterrence, but should not be allowed to destroy the defendant." Arab Termite & Pest Control, 409 So. 2d at 1043; see also Joab, Inc. v. Thrall, 245 So. 2d 291, 293 (Fla. 3d DCA 1971) ("In awarding punitive damages the jury may properly punish each wrongdoer by exacting from his pocketbook a sum of money which, according to his financial ability, will hurt, but not bankrupt . . . ."). Put simply, an award of punitive damages that bankrupts or financially devastates the defendant is unconstitutionally excessive. See Hockensmith v. Waxler, 524 So. 2d 714, 715 (Fla. 2d DCA 1988); Smith v. Telophase Nat'l Cremation Soc'y, Inc., 471 So. 2d 163, 169 (Fla. 2d DCA 1985); Young v. Becker & Poliakoff, P.A., 88 So. 3d 1002, 1007 (Fla. 4th DCA 2012); Lipsig v. Ramlawi, 760 So. 2d 170, 188 (Fla. 3d DCA 2000).

We readily admit, as have other courts, that drawing the line between constitutionally permissible and unconstitutionally excessive can be difficult in the context of punitive damages awards; however, there are some clear rules. Courts have generally held that a punitive damages award that exceeds the defendant's net worth is unconstitutional. See, e.g., Hockensmith, 524 So. 2d at 715 (holding that award of punitive damages that was nearly four times the defendant's net worth was unconstitutionally excessive); Smith, 471 So. 2d at 170 (affirming remittitur of $1,250,000 punitive damages award to $200,000 where defendant had a net worth of $1,000,000 because the original award was unconstitutionally excessive). On the other hand, even very large punitive damages awards will be affirmed when they take but a small proportion of the defendant's net worth. See, e.g., Bould v. Touchette, 349 So. 2d 1181, 1187 (Fla. 1977) (affirming an $800,000 punitive damages award when the

- 5 -

defendant had a net worth in excess of $13 million); Am. Med. Int'l, Inc. v. Scheller, 590 So. 2d 947, 951 (Fla. 4th DCA 1991) (affirming a $19 million punitive damages award when the defendant had a demonstrated net worth in excess of $1 billion). These rules further the public policy that favors the payment of judgments. Other than these two rules, however, little guidance exists.

We have been unable to find any case presenting the exact issue raised here—a punitive damages award that takes exactly 100% of the defendant's net worth. However, we are guided by the Fourth District's decision in Young, in which that court affirmed the trial court's ruling that a punitive damages award representing forty percent of the defendant's net worth was excessive. 88 So. 3d at 1007. Certainly if an award of forty percent of net worth is unconstitutionally excessive, then an award of 100% of net worth is likewise excessive.

Therefore, because the $284,000 punitive damages award is excessive in light of Goellner's net worth and would result in financial devastation, we reverse that award and remand for further proceedings. On remand, the trial court may, in its sound discretion, remit the punitive damages award to a reasonable proportion of Goellner's net worth. If the Brewers do not wish to accept the remittitur, they are entitled to a new trial on the sole issue of the amount of punitive damages. See Smith, 471 So. 2d at 170; see also § 768.043(1), Fla. Stat. (2008).

Affirmed in part, reversed in part, and remanded for further proceedings.

SILBERMAN and CRENSHAW, JJ., Concur.