**John LAWYER, Appellant,**

v.

**Jefferson D. KERNODLE and Upsher Laboratories, Inc., Appellees.**

**Charles Nall, James Lawson, James Carter.**

**No. 83–1301.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1983.

Decided Nov. 16, 1983.

Mark T. Kempton, Sedalia, Mo., for appellant.

Larry McMullen, James D. Conkright, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for appellees.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and DUMBAULD,* Senior District Judge.

LAY, Chief Judge.

John Lawyer appeals from the district court's order dismissing his complaint for damages brought against Jefferson D. Kernodle, a pathologist, and Upsher Laboratories, Inc. Lawyer's complaint sought damages for the negligent diagnosis of the cause of death of Diana Lawyer, John Lawyer's wife, under Missouri law and damages under 42 U.S.C. § 1983 (1976) for the alleged denial of due process caused by Kernodle's "erroneous" and "premature" communication of his conclusions of the cause of death of Diana Lawyer. The district court dismissed the complaint on grounds of official immunity and lack of duty.[1] We affirm the judgment of the district court.

On July 10, 1981, the wife of Lawyer was found dead at her residence in rural Pettis County, Missouri. Thereafter, the coroner of Pettis County ordered an autopsy pursuant to Mo.Rev.Stat. § 58.451.2 (1978) to determine if death was caused by criminal agency. As the coroner was not a physician, he had engaged the continuing services of Upsher Laboratories to perform autopsies for the county pursuant to Mo.Rev. Stat. §§ 58.451.2 and 70.220. On July 11,

---

* The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1. An additional basis of the district court's dismissal was that the plaintiff's claim of malicious prosecution cannot survive when the claim only alleges negligent acts. Several courts have interpreted similar complaints as alleging a claim for malicious prosecution even though not so stated. *See, e.g., Bromund v. Holt,* 24 Wis.2d 336, 129 N.W.2d 149 (1964). We agree with the district court as a matter of law. However, plaintiffs, undoubtedly recognizing the propriety of the district court's holding, disclaim any attempt to allege a suit for malicious prosecution.

1981, Dr. Kernodle, an employee of Upsher, performed an autopsy and rendered his opinion as to the cause of death.[2] This opinion became the official finding of the coroner. This finding, which Lawyer alleges to be erroneous, indicated that death was caused by trauma to the head. Further investigation and interrogation by the police produced additional evidence of criminal agency, and second degree murder charges were brought against Lawyer. These charges were eventually dismissed by the prosecutor in 1982.

■ The district court dismissed Lawyer's claim for negligent diagnosis on the basis that, under Missouri law, the defendants are entitled to the same official immunity which shields the coroner of Pettis County from civil liability for negligent acts. The district court also held that defendants owed no duty to plaintiff when they were acting in an official capacity on behalf of a political subdivision or the public as a whole. We agree with the district court that defendants owed no duty to plaintiff. Without the requisite duty, plaintiff's tort claim fails and we need not reach the issue whether defendants enjoyed official immunity under state law.[3]

■ Under Missouri law, "Before an act is said to be negligent, there must exist a duty to the individual complaining." *Dix v. Motor Market, Inc.,* 540 S.W.2d 927, 932 (Mo.App.1976). When a defendant performs an act under a statute creating a public duty, that defendant's duty is to the public and not to any individual. *Nelson v. Freeman,* 537 F.Supp. 602, 609 (W.D.Mo. 1982); *Parker v. Sherman,* 456 S.W.2d 577, 580 (Mo.1970). The exception, of course, is when the statute also was intended to create a private cause of action. We do not

find that to be the case here. Section 58.- 451.2, Mo.Rev.Stat. (1978), states that when there is "reasonable ground to believe that the death was caused by criminal agency and that a further examination is necessary *in the public interest,* the coroner on his own authority may make or cause to be made an autopsy on the body. The coroner may on his own authority employ the services of a pathologist . . . ." (Emphasis added). The purpose of the autopsy performed by Dr. Kernodle was to assist the coroner in determining, pursuant to Mo.Rev.Stat. § 58.451.2, whether Diana Lawyer had died as the result of criminal agency. This determination would be the basis of the state's decision whether to pursue criminal charges. Kernodle therefore was discharging a duty to the public as a whole and owed no specific duty to plaintiff.

■ In arguing that a duty did exist, Lawyer relies on his right of sepulture and his authorization of the autopsy. In describing the right of sepulture, the Missouri Court of Appeals stated:

The imposition of the duty to bury the dead carries with it the conferring on the person charged therewith of such rights as may be necessary to a proper performance. In the sense in which the word "property" ordinarily is used, one whose duty it becomes to bury a deceased person has no right of ownership over the corpse; but, in the broader meaning of the term, he has what has been called a "quasi property right" which entitles him to the possession and control of the body for the single purpose of decent burial. If the deceased person leave [sic] a widow, such right belongs to her . . . .

*Rosenblum v. New Mt. Sinai Cemetery Association,* 481 S.W.2d 593, 594–95 (Mo.App.

---

**2.** We hereafter treat Upsher and Dr. Kernodle as one. The duty and immunity of Kernodle likewise applies to Upsher.

**3.** The plaintiff urges that the district court erred in finding the defendants were in fact public officials, thereby enjoying the privilege of immunity. They rely on Missouri cases which indicate private individuals employed by the state are not public officials. For example, *State ex rel. Pickett v. Truman* stated: "A per-

son so engaged is an employee and not a public officer, and it matters not that such employment is under the direction of or *in aid of the performance of some duties entrusted to one who is a public officer.*" 333 Mo. 1018, 64 S.W.2d 105, 108 (1933) (emphasis added). *See also Metcalf & Eddy v. Mitchell,* 269 U.S. 514, 520, 46 S.Ct. 172, 173, 70 L.Ed. 384 (1926). We need not decide this issue under Missouri law.

1972) quoting *Litteral v. Litteral,* 131 Mo. App. 306, 111 S.W. 872, 873–74 (1908). Lawyer's right to bury thus confers a duty on others not to negligently interfere with this right. In this case there is no allegation that Lawyer's right to bury his deceased spouse was interfered with. The allegation instead is that Kernodle negligently diagnosed the cause of death. As noted above, any duty created from the diagnosis went to the public and not Lawyer individually.

 Lawyer also argues that he consented to the autopsy and thus had a contractual right to a non-negligent diagnosis. This argument fails for two reasons. First, Lawyer's right was the right to bury his spouse. If the contractual consent put a duty upon Kernodle, the duty was to not interfere with Lawyer's right of a decent burial. Such interference would include unreasonably mutilating the body or refusing to return the body so it could be buried. There is no allegation of this type of interference. Second, Missouri law requires authorization for the performance of an autopsy "[e]xcept when directed by a public officer or agency authorized by law to order an autopsy . . . ." Rev.Stat.Mo. § 194.115.1 (1978). This autopsy was directed by the coroner of Pettis County, who was authorized by law to do so, and therefore an authorization by Lawyer was not required. A duty would arise from the consent only if required.

### Section 1983

With respect to the section 1983 claim, the district court held that there was no liability under the civil rights law when physicians or coroners have acted within the permissible discretion of their authority, and that Lawyer did not allege that these defendants acted outside the permissible scope of their statutory discretion. We agree.

In *Butz v. Economou,* 438 U.S. 478, 507–08, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978) the Supreme Court admonished: "Insubstantial lawsuits can be quickly terminated by federal courts alert to the possibilities of artful pleading. . . . [D]amages suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), sets the standard for qualified or "good faith" immunity: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[4]

 We think it clear that Kernodle, in performing the autopsy of Diana Lawyer for Pettis County, was acting under color of state law and was exercising his professional judgment and discretion. His services were engaged pursuant to statutory authority and his opinion as to the cause of death became the basis of the government's decision whether to bring criminal charges. Lawyer urges that Kernodle was not a public official and therefore lacks standing to assert good faith immunity. Whether Kernodle was a public official or not we find immaterial under § 1983. Lawyer alleges that Kernodle was acting under color of state law, which of course he was. Since he was engaged under the statute to perform official duties, he was performing those duties under color of state law and he clearly enjoyed the same immunity privilege the coroner could assert.

 It has generally been held that coroners enjoy a qualified immunity when performing their official functions for the state. *See, e.g., Willett v. Wells,* 469

---

4. Although *Harlow* involved immunity for federal officials and not immunity for state officials sued under § 1983, the Court noted that "it would be 'untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.'" *Harlow v. Fitzgerald,* 457 U.S. 800, 818 n. 30, 102 S.Ct. 2727, 2739 n. 30, 73 L.Ed.2d 396 (1982) (quoting *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978)).

F.Supp. 748, 752–53 (E.D.Tenn.1977); *Hebert v. Morley,* 273 F.Supp. 800, 802 (C.D. Calif.1967). Other courts have found private physicians to be immune when performing official functions of the state. In *Bartlett v. Weimer,* 268 F.2d 860 (7th Cir. 1959), for example, a private physician was appointed by the probate court pursuant to statutory authority to render an opinion on the mental health of the plaintiff. The physician's opinion led to the confinement of the plaintiff. The Seventh Circuit affirmed the dismissal of plaintiff's complaint; the court held that the physician was appointed and acted as an officer of the court in giving his opinion as to the mental health of the plaintiff. He was therefore protected by the same immunity extended to judges and other judicial officers. *See also Burkes v. Callion,* 433 F.2d 318 (9th Cir.1970) (court-appointed psychiatrist).

■ Although in the instant case Kernodle was not appointed by the court and thus does not enjoy judicial or quasi-judicial immunity, the same principles apply using prosecutorial immunity. In *Keating v. Martin,* 638 F.2d 1121 (8th Cir.1980), we stated: "Prosecutors and their assistants also enjoy immunity from section 1983 actions so long as the actions complained of appear to be within the scope of prosecutorial duties.... This immunity is equally available to investigators for the state prosecutor for actions in connection with a criminal prosecution." *Id.* at 1122 (citations omitted). We believe that Kernodle should enjoy the same immunity that "investigators for the state prosecutor" enjoy. Kernodle was determining the cause of death of Diana Lawyer and this determination was to be used in the prosecutor's decision whether to institute criminal charges. The deprivation alleged by Lawyer is directly related to the institution of these criminal charges. Even if Dr. Kernodle performed the autopsy negligently, in doing so he did not violate "clearly established statutory or constitutional rights" of Lawyer. We therefore affirm the district court's judg-

ment that Dr. Kernodle was entitled to qualified immunity.

Judgment of dismissal is affirmed.