519 So.2d 682 (1988)
Sandra Vee KIRKER, Appellant,
v.
ORANGE COUNTY and Shashi B. Gore, M.D., Appellees.
No. 87-14.
District Court of Appeal of Florida, Fifth District.
January 28, 1988.
Sylvia K. Drusa, of Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, for appellant.
Ernest H. Eubanks, of Pitts, Eubanks, Hilyard, Rumbley & Meier, P.A., Orlando, for appellees.
ORFINGER, Judge.
The plaintiff below appeals a final order by which the trial court dismissed her action against two of the defendants on the ground that her complaint failed to state a cause of action against them. We affirm in part and reverse in part.
Assuming the well pleaded facts to be true, as we must in determining the sufficiency of a pleading, the lengthy complaint can be summarized as follows. Plaintiff's three year old child died on September 9, 1983 while an inpatient at Orlando Regional Medical Center, as a result of cerebral hypoxia due to a near drowning incident a few days earlier. When the child's condition appeared terminal, her attending physician *683 asked the plaintiff if she wished to donate the child's corneas and kidneys. The plaintiff denied permission and her refusal or objection was specifically noted in the child's hospital chart.
After the child died, her chart was picked up by an employee of the Medical Examiner's office. Despite the refusal noted in the chart, the child's corneas and eye globes were removed (eye enucleation) within three hours after her death and were delivered to Medical Eye Bank, Inc., a private eye bank with which the Medical Examiner's office had a contract for harvesting corneas from autopsied Medical Examiner cases. The records of the eye bank indicate that permission for the eye enucleation was given by defendant Shashi B. Gore, M.D., an Associate Medical Examiner. The Medical Examiner's office is an agency of defendant Orange County.
It is further alleged that on the day following her death, Dr. Gore performed an autopsy on the body of the deceased child and in his report noted that "the color of the eyes is blue, the pupils are circular, bilaterally symmetrical and have a diameter of about six millimeters"; that this report was false in that the child's eyes had been brown, and had already been removed when the report was made. Plaintiff alleged that these false statements were made with the intent to cover up the fact that the eyes had been removed over her objection, and that she did not, in fact, discover that they had been removed until the time of the funeral, when she discovered that the child's eyes appeared deformed, i.e., depressed. She sought damages against Dr. Gore for tortious interference with rights pertaining to dead bodies and for intentional infliction of emotional distress, and sought damages against Orange County for tortious interference with rights pertaining to dead bodies based on the actions of its agents, the employees of the Medical Examiner's office.
The trial court dismissed the action as to Gore and Orange County[1] upon a holding "that there is no property right in the dead body and that removal is not mutilation and did not interfere with possession or burial of the body." The trial court erred in dismissing the complaint as to Dr. Gore, but reached the correct result as to Orange County, albeit for the wrong reason.
In her action, the plaintiff seeks recovery for her mental pain, anguish and suffering which she sustained as a result of what she contends to be her right to receive her child's body for burial in an unmutilated or unchanged condition. It has long been the law in this state that as a general rule, there can be no recovery for mental pain and anguish (emotional distress) unconnected with physical injury, where the action is based on simple negligence. Dunahoo v. Bess, 146 Fla. 182, 200 So. 541 (1941). One of the exceptions to that rule was recognized in Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950) where the court observed that the rule would not be extended to cases
where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages. See 15 Am.Jur., Damages, Sec. 179, page 596; Restatement of Torts, Section 47(b). The right to recover, in such cases, is especially appropriate to tortious interference with rights involving dead human bodies, where mental anguish to the surviving relative is not only the natural and probable consequence of the character of wrong committed, but indeed is frequently the only injurious consequence to follow from it.
45 So.2d at 189.
The principles espoused in Kirksey v. Jernigan have been applied in other cases. Florida courts have recognized a valid cause of action based on unauthorized or wrongful embalming, Scheuer v. Wille, 385 So.2d 1076 (Fla. 4th DCA 1980); unauthorized autopsy, Jackson v. Rupp, 228 So.2d 916, *684 918 (Fla. 4th DCA 1969), affirmed, 238 So.2d 86 (Fla. 1970); Prescott v. Lovett, 239 So.2d 606 (Fla. 4th DCA), cert. denied, 240 So.2d 646 (Fla. 1970); and mishandling of a corpse, Scherer v. Rubin Memorial Chapel, Ltd., 452 So.2d 574 (Fla. 4th DCA 1984). See also Smith v. Telophase National Cremation Society, Inc., 471 So.2d 163 (Fla. 2d DCA 1985) (intentional infliction of emotional distress for failure of defendant to dispose of decedent's ashes in accordance with specific instructions). The common bond in all these cases is the conclusion that the acts complained of rise to the level of negligence characterized as willful, wanton or malicious behavior, such as would warrant the assessment of exemplary or punitive damages. See Ingaglio v. Kraeer Funeral Home, Inc., 515 So.2d 428 (Fla. 4th DCA 1987). Cf. Estate of Harper v. Orlando Funeral Home, Inc., 366 So.2d 126 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 637 (Fla. 1980) (Allegation that casket fell apart as body was being carried from hearse did not rise to the level of malice or entire want of care and great indifference so as to sustain an action for emotional distress in next of kin); Kimple v. Riedel, 133 So.2d 437 (Fla. 2d DCA 1961) (No evidence of malice in removal of body from doctor's office to funeral home). More recently, the Florida supreme court has recognized the tort of outrage where the complained of conduct which causes the emotional distress is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metropolitan Life Insurance Company v. McCarson, 467 So.2d 277 (Fla. 1985). This cause of action would include, but is not limited to the interference with burial rights of next of kin.
We have no difficulty in concluding that the allegations of the complaint sufficiently allege willful, wanton or malicious behavior on the part of Dr. Gore. Assuming the evidence supports the allegations, a jury could conclude that the doctor removed the eyes despite the express objection of the mother, then attempted to cover up the removal by falsifying the autopsy report. Most authorities agree that the right of action for mutilation of a dead body is based on the right of a surviving next of kin to bury the body "in the condition found when life became extinct." 22 Am.Jur.2d, Dead Bodies, §§ 31, 32 (1965). The courts are not primarily concerned with the extent of the mishandling or injury to the body, per se, "but rather with the effect of the same on the feelings and emotions of the surviving relatives, who have the right to burial." Jackson v. Rupp, supra, 228 So.2d at 918; Kirksey v. Jernigan, supra.
Dr. Gore argues that section 732.9185, Florida Statutes (1985) shields him from liability in this case, because the statute expressly authorizes a district medical examiner, at the request of an eye bank, to provide the cornea of a decedent whose body is in the custody of the medical examiner for purposes of autopsy.[2] Two factors make this statute inapplicable here. First, more than just removal of the corneas is alleged. The complaint here is of the removal of the eyes themselves. Next, and in no way less important, is the requirement of the statute that "No objection by the next of kin of the decedent is known by the medical examiner." § 732.9185(1)(b), Fla. Stat. (1985). The complaint alleges that the mother's refusal was noted in the hospital chart which was in the medical examiner's possession at the time the eyes were removed. The action should not have been dismissed as to Dr. Gore.
The very need to allege and prove willful, wanton or malicious conduct to sustain an action against the medical examiner makes the case non-actionable against the county because of the statute which continues to surround governmental units with *685 the shield of sovereign immunity in the face of such conduct, viz,
The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
§ 768.28(9)(a), Fla. Stat. (1985). Other allegations of negligence against the county, such as failure to provide proper procedures for cornea removal and failure to generate and maintain accurate records of such procedures involve governmental functions which are immune, but even if they were not, they do not rise to the level of willful, wanton or malicious behavior such as would sustain an action for emotional distress.
We therefore affirm the final order of dismissal as to Orange County, reverse said order as to Shashi B. Gore, M.D., and remand the cause for further proceedings.
AFFIRMED in part; REVERSED in part, and REMANDED.
DAUKSCH and COBB, JJ., concur.
NOTES
[1] Orlando Regional Medical Center is a defendant as well, but was not dismissed. We have jurisdiction of the appeal because the dismissal is final as to Gore and Orange County. See Niesz v. R.P. Morgan Building Co., 401 So.2d 822 (Fla. 5th DCA 1981).
[2] This statute was held to be constitutional in State v. Powell, 497 So.2d 1188 (Fla. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 2202, 95 L.Ed.2d 856 (1987). Although Powell recognizes the rule that a decedent's next of kin has no property rights in the dead body, it reasserts the rule that there is a limited right to the possession of the body for the purpose of burial, sepulture, or other lawful disposition.