778 So.2d 978 (2001)
John CROCKER, et al., Petitioners,
v.
Richard PLEASANT, etc., et al., Respondents.
No. SC95148.
Supreme Court of Florida.
February 1, 2001.
*979 V. Lynn Whitfield of Whitfield & Mosley, West Palm Beach, Florida; and Dea Abramschmitt, West Palm Beach, FL, for Petitioners.
*980 Patrick N. Brown, City Attorney, Claudia M. McKenna, Deputy City Attorney, and Mayra I. Rivera-Delgado, Assistant City Attorney, and Leonard Berger, Assistant County Attorney, West Palm Beach, FL, for Respondents.
Carl E. Brody, Jr., Assistant County Attorney, Clearwater, FL, for The Florida Association of County Attorneys, Amicus Curiae.
PARIENTE, J.
We have for review a decision of the Fourth District Court of Appeal, which certified the following question certified to be of great public importance:
DOES [STATE V.] POWELL [497 So.2d 1188 (Fla.1986)] PRECLUDE ALL SECTION 1983 CLAIMS GROUNDED ON INTERFERENCE WITH AN INTEREST IN A DEAD BODY?
Crocker v. Pleasant, 727 So.2d 1087, 1089 (Fla. 4th DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons explained in this opinion, we answer the certified question in the negative.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The decedent in this case was the adult son of the petitioners, John Crocker and Betty Crocker (the "Crockers"), who brought an action under 42 U.S.C. § 1983 (1994), against Palm Beach County ("County") and the City of West Palm Beach ("City").[1]See Crocker, 727 So.2d at 1087-88. The uncontested facts are set forth in the Fourth District's opinion:
Appellants' twenty-three year old son was found dead in West Palm Beach without identification. Three days later, the West Palm Beach police officer assigned to investigate obtained the name and address of the plaintiffs in Miami Shores, and teletyped Miami Shores' police department requesting the department to have the plaintiffs call the officer about their son. The officer did not advise Miami Shores that this was a death notification.
The Miami Shores police notified the officer that no one was home but that they would try again. The officer then sent a second teletype to Miami Shores, advising that "no extra effort was necessary and that a note to contact him would suffice." The officer took no other steps to contact the plaintiffs, closed the file, and authorized the release of their son's body to Palm Beach County for burial. Prior to the burial, which occurred about two months after the death, the parents had filed a missing person's report, had continuously searched for their son, and had flyers distributed with his picture on them. The missing person's report was available to the West Palm Beach police. Six months later plaintiffs first learned through their own efforts of their son's death.
Crocker, 727 So.2d at 1088.
In their action against the City and the County, the Crockers alleged that they had a "constitutionally protected property interest in the body" of their son and "a right to procedural due process under the Fourteenth Amendment of the United States Constitution prior to the deprivation of their property interest." Accordingly, the Crockers' allegations against the County focused on the County's failure to use reasonable efforts to notify them of their son's death before his burial.[2] The Crockers' allegations against the City focused not only on the police officer's failure *981 to notify the Crockers of their son's death before his burial, but also on the City's failure to adequately supervise, discipline, and retrain the officer, despite the City's awareness of the officer's "propensity to violate the operating procedures which leads to the violation of the rights of others."[3] The Crockers further alleged that as a result of the failure to notify them of their son's death, they were deprived of the right to possess the body for "burial or disposition in any other lawful manner for a period of six months."
The City and County each filed a motion for judgment on the pleadings and the trial court granted both motions.[4] In granting these motions, the trial court relied both on State v. Powell, 497 So.2d 1188 (Fla.1986), in which this Court upheld as constitutional a state statute that authorized removal of corneal tissue from a dead body without permission of relatives, and *982 on Gonzalez v. Metropolitan Dade County Public Health Trust, 651 So.2d 673 (1995), in which this Court determined that either physical injury or willful or wanton misconduct is required to support a cause of action for mental anguish based on negligent handling of a corpse.
On appeal, the Fourth District affirmed the trial court's order based solely on this Court's decision in Powell. See Crocker, 727 So.2d at 1089. The Fourth District interpreted Powell as having decided that "the right of next of kin to possess the body for burial was not a `protectable liberty or property interest in the remains' of the decedent." Id. at 1088 (quoting Powell, 497 So.2d at 1193). Nonetheless, the Fourth District expressed concern about the Crockers' inability to bring a section 1983 action because the court regarded the misconduct alleged in the present case to be "much more egregious than the claim made in Powell." Id. at 1089. Specifically, the Fourth District stated that "the allegations in the present case are that the West Palm Beach police officer showed such a callous indifference to the rights of the plaintiffs, whose names and address in Miami were known to him, as to constitute outrageous conduct and tortious interference with the right of burial." Id. Accordingly, the court affirmed the trial court's judgment, but stated that this Court "should determine whether Powell is limited to corneal removal or precludes section 1983 actions where the interference with burial is more egregious." Id. The Fourth District thus certified the question of whether Powell precludes all section 1983 claims grounded on interference with an interest in a dead body.

LAW AND ANALYSIS

1. Actions Under 42 U.S.C. Section 1983

Section 1983 provides in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983 (Supp.1998) (emphasis added). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). Thus, a person alleging a deprivation of his or her Fourteenth Amendment[5] rights may bring a cause of action against the State or any local governmental entity under section 1983.[6]See 42 U.S.C. § 1983.
Broadly speaking, claims against the State under section 1983 have been grouped into three general categories. See Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). First, a person may bring an action under section 1983 for a state official's deprivation of that individual's fundamental rights guaranteed by the Bill of Rights, such as freedom of speech or freedom from unreasonable searches and seizures. See id. Second, a person may bring a section 1983 action for a violation of substantive due process that amounts to "arbitrary, wrongful government actions `regardless of the fairness of the procedures used to implement them.'" Id. (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, *983 88 L.Ed.2d 662 (1986)). In this category, courts have consistently required that in order to constitute a violation of substantive due process, the right must be "implicit in the concept of ordered liberty." McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir.1994). A violation of substantive due process can also arise where the governmental action "shocks the conscience." Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). "As a general matter, the [U.S. Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).
Lastly, and important for our analysis in this case, a person also may bring a section 1983 action for the deprivation of procedural due process under the Fourteenth Amendment of the United States Constitution. See Zinermon, 494 U.S. at 125, 110 S.Ct. 975. To maintain a claim under this third type of section 1983 action, the individual bringing an action for deprivation of procedural due process must first establish the existence of a constitutionally protected property or liberty interest that has been interfered with by the State. See Kentucky Dep't. of Corr. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). The United States Supreme Court has held that in order to have a property interest, "a person clearly must have more than an abstract need or desire for it.... He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In addition, several federal courts have referred to the interest of the next of kin in their loved one's remains as a state "quasi-property right." See, e.g., Arnaud v. Odom, 870 F.2d 304, 308 (5th Cir.1989) (applying Louisiana law); Fuller v. Marx, 724 F.2d 717, 719 (8th Cir.1984) (applying Arkansas law). Accordingly, the threshold question presented in this case is whether the Crockers have a constitutionally protected property interest, "quasi-property right," or "legitimate claim of entitlement" to possess their son's remains for burial so as to give rise to procedural due process protection.
In order to determine whether a property right, quasi-property right or legitimate claim of entitlement protectable under the Constitution exists, we must look to applicable state law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). This is because
[p]roperty interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state lawrules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
Roth, 408 U.S. at 577, 92 S.Ct. 2701.[7] "Although the underlying substantive interest is created by `an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a `legitimate claim of entitlement....'" Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). The Eighth Circuit has explained this dichotomy as follows: "Section 1983 does not create substantive rights; rather, state law establishes the property interest while federal constitutional *984 law determines whether the state law property interest rises to a constitutionally protected property interest." Riley v. St. Louis County, 153 F.3d 627, 630 (8th Cir.1998) (citations omitted), cert. denied, 525 U.S. 1178, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1999). Thus, whether labeled a property interest, a quasi-property interest or a legitimate claim of entitlement, the "sufficiency of the claim of entitlement must be decided by reference to state law." Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); see Morley's Auto Body, Inc. v. Hunter, 70 F.3d 1209, 1213-14 (11th Cir.1995) (looking at Florida case law to determine whether plaintiffs had a legitimate claim of entitlement to set forth a cognizable section 1983 claim).

2. Powell and the Certified Question

When addressing the issue of whether the Crockers' right to possess their son's body for burial should be afforded constitutional protection, the Fourth District relied upon Powell to conclude "that the right of the next of kin to possess the body for burial was not a `protectable liberty or property interest in the remains' of the decedent." Crocker, 727 So.2d at 1088 (quoting Powell, 497 So.2d at 1193). Accordingly, the issue presented by the certified question is whether that statement in Powell was limited to the issue of the constitutionality of the corneal removal statute or whether our reasoning in Powell precludes finding that the Crockers possessed a "protectable property interest in the remains" of their son so as to bar any section 1983 action arising from an alleged deprivation of procedural due process.
In Powell, the parents brought an action against various state officials alleging the wrongful removal of their deceased sons' corneas without the parents' notice or consent. 497 So.2d at 1189-90. Notably, the parents did not challenge the State's right to conduct the autopsy without their consent; instead, they challenged the constitutionality of section 732.9185, Florida Statutes (1983), which authorized medical examiners to remove corneal tissue from decedents during statutorily required autopsies when "a patient is in need of corneal tissue for a transplant." § 732.9185(1), Fla. Stat. (1983).
In our opinion in Powell, this Court began by explaining the legitimate state interest in obtaining suitable corneal tissue that can restore sight to the functionally blind, which is especially important for the elderly and newborns. 497 So.2d at 1190-91. The Court also noted that the record reflected that the key to successful corneal transplantation is the availability of high-quality corneal tissue that must be obtained shortly after death. See id. at 1191. Significantly, the Court observed that although an autopsy "necessarily results in a massive intrusion into the decedent[,] ... cornea removal, by comparison, requires an infinitesimally small intrusion which does not affect the decedent's appearance. With or without cornea removal, the decedent's eyes must be capped to maintain a normal appearance." Id. Thus, this Court held that the statute authorizing the removal of the corneal tissue achieves "the permissible legislative objective of providing sight to many of Florida's blind citizens." Id.
In reaching this conclusion in Powell, the Court analyzed the question of protected constitutional rights and stated that "a person's constitutional rights terminate at death. If any rights exist, they belong to the decedent's next of kin." Id. at 1190 (citations omitted). The Court then rejected the parents' claim that the right to control the disposition of their decedents' remains is a fundamental right of personal liberty protected against unreasonable governmental intrusion by the Due Process Clause, concluding that "[n]either federal nor state privacy provisions protect an individual from every governmental intrusion into one's private life, especially when a statute addresses public health issues." Id. at 1193 (citation omitted).
*985 Despite broad language used in the Powell opinion, our holding in that case was limited to an analysis of the constitutionality of the cornea removal statute that addressed a public health issue. In fact, in that case we balanced the State's interest in obtaining suitable corneal tissue against the "infinitesimally small intrusion" incident to the corneal tissue removal. Id. at 1191. As Justice Shaw pointed out in his dissenting opinion in Powell, the only issue before the Court in that case was the constitutionality of the statute authorizing medical examiners to remove corneal tissue from decedents. Id. at 1194 (Shaw, J. dissenting). Although the Powell petitioners included a section 1983 claim in their complaint, the issue of the viability of that claim was not before the Court. More importantly, the Court could have upheld the constitutionality of the statute without any consideration of the section 1983 action because the Court found that in light of the "massive intrusion" that necessarily followed from the autopsy, the "infinitesimally small intrusion which does not affect the decedent's appearance" did not amount to a violation of the right of the next of kin to possess the decedent's remains for purposes of burial. Id. at 1191. Any potential right of the next of kin was based upon their need to celebrate the life of the deceased "through appropriate commemoration," and that potential right was qualified by the "overriding police power of the state to regulate the care and disposition of dead bodies." Id. at 1196 (Shaw, J. dissenting).
Our rejection in Powell of a constitutional attack on a narrowly drawn statute regulating the disposition of the corneas of a deceased person does not necessarily translate into the broader conclusion that the right to possess a loved one's remains for the purposes of burial should never be accorded protected status under the Fourteenth Amendment, whether labeled a "quasi-property right" or a "legitimate claim of entitlement." Although we rejected the petitioners' constitutional claims in Powell, we explained that Florida recognizes a limited right to possession of the body for "burial, sepulture or other lawful disposition." Id. at 1191. This conclusion is consistent with the approach of other courts that have found that this right constitutes a legitimate claim of entitlement or a quasi-property interest.
In Lawyer v. Kernodle, 721 F.2d 632 (8th Cir.1983), one of the cases cited in Powell, for example, the Eighth Circuit rejected a claim based on section 1983 that arose from allegations of a negligent diagnosis of the cause of death.[8] Although finding that the allegations of the complaint did not give rise to a duty, the Eighth Circuit nevertheless recognized the parameters of the underlying right:
In the sense in which the word "property" ordinarily is used, one whose duty it becomes to bury a deceased person has no right of ownership over the corpse; but, in the broader meaning of the term, he has what has been called a "quasi property right" which entitles him to the possession and control of the body for the single purpose of decent burial. If the deceased person leave [sic] a widow, such right belongs to her ....
721 F.2d at 634 (emphasis added).
Two months later, the Eighth Circuit in Fuller v. Marx, 724 F.2d 717 (8th Cir. 1984), considered a section 1983 claim based on allegations that the coroner failed to return to the plaintiff all of the body organs of the plaintiff's dead husband following an autopsy. In explaining the dimensions of the right, the Eighth Circuit relied on the applicable Arkansas state law:
Under Arkansas law, the next of kin does have a quasi-property right in a *986 dead body. See Teasley v. Thompson, 204 Ark. 959, 165 S.W.2d 940, 942 (1942). Mrs. Fuller received the body in what appeared to be acceptable condition. We know of no Arkansas cases which extend this quasi-property right to all of the body's organs, and in any event we note that under Arkansas law Mrs. Fuller could have taken possession of her husband's organs if she had made a written request.
724 F.2d at 719 (emphasis added).[9]
Likewise, in Arnaud v. Odom, 870 F.2d 304 (5th Cir.1989), the Fifth Circuit examined a section 1983 claim arising from allegations that before performing the mandatory autopsy, the medical examiner had performed unauthorized experiments on two infants who had died from Sudden Infant Death Syndrome. The threshold issue in the case was whether the parents of the infants had been deprived of a constitutional property or liberty interest in the bodies of their children within the context of section 1983. See id. at 307. On appeal, the Fifth Circuit considered the relevant Louisiana statutory and case law regarding the rights of next of kin in the body of a deceased relative and concluded that Louisiana statutory and case law created a "quasi-property" right for survivors in the remains of their dead relative. Id. at 308. In particular, the Fifth Circuit relied on a Louisiana statute providing the order of priority of those who had the right to control the disposition of the remains of a deceased person and Louisiana case law recognizing the right of relatives to possess the body of the deceased for burial. See id.
Similarly, Brotherton v. Cleveland, 923 F.2d 477 (6th Cir.1991), involved a section 1983 action regarding the potential property interest in a deceased's remains. The court in Brotherton noted that "a majority of the courts confronted with the issue of whether a property interest can exist in a dead body have found that a property right of some kind does exist and often refer to it as a `quasi-property right.'" Id. at 480. In finding that the next of kin had a constitutionally protected interest in her relative's corneas that rose to the level of a "legitimate claim of entitlement," the Sixth Circuit relied on Ohio statutes, including Ohio's version of the Uniform Anatomical Gift Act, that granted the next of kin the right to control the disposal of the body. Id. at 482. The Sixth Circuit also relied on Ohio case law that: (1) acknowledged that the next of kin have the right to possess the body for burial; and (2) allowed a claim by the next of kin against those who disturb a buried dead body. See id. at 480-82.
Four years after Brotherton, the Sixth Circuit reached the same conclusion in a case arising under Michigan law. See Whaley v. County of Tuscola, 58 F.3d 1111 (6th Cir.1995). As in Brotherton, in finding a "legitimate claim of entitlement," the Sixth Circuit relied upon Michigan case law that the next of kin have a right to possess the body for burial and prevent its mutilation, and the court also relied upon Michigan's Anatomical Gift Act. See Whaley, 58 F.3d at 1115-16.
Similar to the statutes and case law in the cases that have found a constitutionally protected right (either referred to as a "legitimate claim of entitlement" or a "quasi-property *987 right"), Florida law also contains a number of indicia, both in its statutes and case law, that recognize the rights of the next of kin in their dead relatives' remains. For example, pursuant to section 245.07, Florida Statutes (2000), a county may not bury or cremate any body received by the anatomical board without making a "reasonable effort to contact any relatives of the deceased person [and i]f a relative of the deceased person is contacted and expresses a preference for either burial or cremation, the county shall make a reasonable effort to accommodate the request of the relative." § 245.07. Likewise, section 732.912(3), Florida Statutes (2000), authorizes the donation of a decedent's body or organs by the next of kin in a prescribed order of priority, and section 732.912(4), recognizes the right of the next of kin to object to the removal or donation of organs. Further, section 732.9185(1)(b), Florida Statutes (2000), provides for the right of the next of kin to object to the donation of corneal tissue.[10]
In addition to these statutory provisions, Florida case law has long recognized the right to possess a loved one's remains for purposes of burial or other appropriate disposition:
It is well settled that, in the absence of testamentary disposition to the contrary, a surviving spouse or next of kin has the right to the possession of the body of a deceased person for the purpose of burial, sepulture or other lawful disposition which they may see fit. And the invasion of such right by unlawfully withholding the body from the relative entitled thereto is an actionable wrong, for which substantial damages may be recovered.

Kirksey v. Jernigan, 45 So.2d 188, 189 (Fla.1950) (emphasis added) (citations omitted). In recognizing the exception to the impact rule, this Court observed that this rule would not be extended to cases:
where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages. The right to recover, in such cases, is especially appropriate to tortious interference with rights involving dead human bodies, where mental anguish to the surviving relative is not only the natural and probable consequence of the character of wrong committed, but indeed is frequently the only injurious consequence to follow from it.

Id. at 189. (emphasis supplied). Thus, Florida cases have recognized causes of action based upon interference with a dead relative's body in a variety of circumstances where the underlying conduct alleged rises to the level of intentional misconduct or malice. See, e.g., Kirker v. Orange County, 519 So.2d 682, 684 (Fla. 5th DCA 1988) (right of action for mutilation of dead body based on right of next of kin to bury body in an unmutilated condition); Smith v. Telophase Nat'l Cremation Soc'y, Inc., 471 So.2d 163, 165 (Fla. 2d DCA 1985) (intentional infliction of mental distress for failure to properly dispose of decedent's ashes); Sherer v. Rubin Mem'l Chapel, Ltd., 452 So.2d 574, 575 (Fla. 4th DCA 1984) (holding that relatives of deceased alleged facts sufficient to impute malice in mishandling of corpse); Scheuer v. Wille, 385 So.2d 1076, 1078 (Fla. 4th DCA 1980) (claim of intentional infliction of emotion distress for unauthorized embalming precluded entry of summary judgment for funeral home).
*988 Based upon these statutory rights of the next of kin in their dead relatives' bodies, along with the case law on this issue, we conclude that in Florida there is a legitimate claim of entitlement by the next of kin to possession of the remains of a decedent for burial or other lawful disposition. We also find that referring to the interest as a "legitimate claim of entitlement" most accurately describes the nature of the interest. Accordingly, Powell does not "preclude all section 1983 claims grounded on interference with an interest in a dead body," Crocker, 727 So.2d at 1089, and therefore we answer the certified question in the negative.

3. The Crockers' Section 1983 Action

Although we find that the Crockers, as their son's next of kin, have a legitimate claim of entitlement to possess their son's remains for burial or other lawful disposition, we make clear that this determination is not dispositive of whether the allegations in this case can survive a motion for judgment on the pleadings or whether the Crockers can otherwise prevail in their section 1983 action. Indeed, the City and County urge us to find that despite any inchoate right the Crockers might have, there has been no constitutional violation here because a "deprivation" of that right has not been established.
In this case, although the Fourth District has characterized the officials' conduct as "egregious," Crocker, 727 So.2d at 1089, the Crockers have advised this Court that the trial court has subsequently found as a matter of law that the individual officer was not acting in "bad faith" or "with malicious purpose." § 768.28(9)(a), Fla. Stat. (2000).[11] Indeed, the trial court found that "nothing in the record reveals that the officer was acting outside the scope of his employment, in bad faith, or with malicious purpose." Further, the Crockers have conceded in this Court that they cannot prove the existence of willful or malicious conduct on the part of the City or County.
The United States Supreme Court has made clear that only "deprivations" of constitutional rights are covered by section 1983 and deprivations that are merely negligent are not sufficient to constitute "deprivations" under section 1983. See Daniels, 474 U.S. at 330-31, 106 S.Ct. 662. As the Court explained in Daniels:
Historically, this guarantee of due process [under the Fourteenth Amendment] has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property. E.g., Davidson v. New Orleans, 96 U.S. 97 [, 24 L.Ed. 616] (1878) (assessment of real estate); Rochin v. California, 342 U.S. 165 [, 72 S.Ct. 205, 96 L.Ed. 183] (1952) *989 (stomach pumping); Bell v. Burson, 402 U.S. 535 [, 91 S.Ct. 1586, 29 L.Ed.2d 90] (1971) (suspension of driver's license); Ingraham v. Wright, 430 U.S. 651 [, 97 S.Ct. 1401, 51 L.Ed.2d 711] (1977) (paddling student); Hudson v. Palmer, 468 U.S. 517 [, 104 S.Ct. 3194, 82 L.Ed.2d 393] (1984) (intentional destruction of inmate's property). No decision of this Court before Parratt supported the view that negligent conduct by a state official, even though causing injury, constitutes a deprivation under the Due Process Clause. This history reflects the traditional and common-sense notion that the Due Process Clause, like its forebear in the Magna Carta, see Corwin, The Doctrine of Due Process of Law Before the Civil War, 24 Harv. L.Rev. 366, 368 (1911), was "intended to secure the individual from the arbitrary exercise of the powers of government."
474 U.S. at 331, 106 S.Ct. 662; see County of Sacramento v. Lewis, 523 U.S. 833, 848-49, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). In Daniels, the Court receded from its prior decision in Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), "to the extent that it states that mere lack of due care by a state official may `deprive' an individual of life, liberty, or property under the Fourteenth Amendment." 474 U.S. at 330-31, 106 S.Ct. 662.[12]
Accordingly, it is not clear that the Crockers will be able to establish that a "deprivation" occurred, which would be a requirement of their section 1983 claim. Nonetheless, the scope of the certified question before us is narrow, and therefore we decline to rule as a matter of law that the Crockers will be unable to recover on their section 1983 claim based on a deprivation or the lack of intentional conduct on the officials' part.
The County also urges us to find that the Crockers' cause of action is barred because the state provides adequate state remedies. In this case, the Crockers' allegations were limited to a claim that the deprivation of the right to possess their son's remains for a period of time occurred without procedural due process. At oral argument, counsel for the Crockers' reiterated that the Crockers' claims were limited to deprivation of property without due process and that they were not claiming the deprivation of a liberty interest, nor were they contending that their substantive due process rights were violated.[13]
In procedural due process claims, the availability of state post-deprivation remedies is relevant to whether a constitutional deprivation has occurred because
the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; *990 what is unconstitutional is the deprivation of such an interest without due process of law. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.
Zinermon, 494 U.S. at 125-26, 110 S.Ct. 975 (citations omitted) (footnote omitted). In some circumstances "a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process[,] ... simply because they are the only remedies the State could be expected to provide." Id. at 128, 110 S.Ct. 975 (citations omitted). Thus in both Arnaud and Fuller the courts found that, although a right existed, the claim was barred because state remedies were adequate. See Arnaud, 870 F.2d at 308;[14]Fuller, 724 F.2d at 719.[15]
The Crockers assert, however, that they have no adequate remedy at state law because our decision in Gonzalez, 651 So.2d at 673, would not allow them to recover under state law under any circumstance. They assert that even if they could prove willful or wanton misconduct against the individual officers to allow a claim for tortious interference, they would be precluded by our sovereign immunity statute from recovering against the City or County.[16] In other words, the Crockers' argument is that they do not have an adequate state remedy because the combination of Florida's sovereign immunity statute and this Court's case law essentially means that they have no redress under state tort law. Although the parties raise this issue in the briefs, we decline to decide in this case whether our decision in Gonzalez would mean that the Crockers are deprived of an adequate state remedy because this issue is beyond the scope of *991 the certified question and because it was not decided or discussed in the Fourth District's opinion.[17]

CONCLUSION
In summary, our holding in Powell does not in itself preclude the Crockers' section 1983 action here, and therefore we answer the certified question in the negative. Nonetheless, a section 1983 action necessarily requires more than negligent conduct before a "deprivation" under that statute may arise. Because the Fourth District labeled the conduct in this case as "egregious," it may have assumed the existence of the requisite level of misconduct to sustain a 1983 cause of action. However, subsequent rulings by the trial court in this case and concessions by the Crockers in this Court may undermine the accuracy of that assumption. Moreover, because the Crockers' claim is one for procedural due process, the issue of the adequacy of the state remedy must be addressed. For all of these reasons, we quash the Fourth District's decision and remand this case to the Fourth District for further proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, LEWIS and QUINCE, JJ., concur.
SHAW and HARDING, JJ., concur in result only.
WELLS, C.J., concurs in part and dissents in part with an opinion.
WELLS, C.J., concurring in part and dissenting in part.
I concur that the answer to the specific question should be in the negative because State v. Powell, 497 So.2d 1188 (Fla.1986), is distinguishable.
I dissent from reversing the district court's decision because I would find no basis for a section 1983 action. I would affirm the result of the district court.
NOTES
[1] The scope of the appeal in this Court is limited solely to the Crockers' claims against the City and County under section 1983. In addition to these section 1983 claims, however, the Crockers also brought a negligence claim against the City and a tort action (alleging tortious interference with rights and outrageous conduct) against the individual police officer. At oral argument, counsel for the Crockers advised that the negligence claim was still pending against the City and that no final judgment had been entered against the individual officer.
[2] More specifically, the Plaintiffs' allegations against the County were as follows:

30. The Plaintiffs as the next of kin of the deceased Jay Crocker had a constitutionally protected property interest in the body of Jay Crocker and a right to procedural due process under the Fourteenth Amendment of the United States Constitution prior to the deprivation of their property interest.
31. The Defendant County has a statutory duty to use reasonable efforts to notify the next of kin of the deceased Jay Crocker prior to burial. The Defendant County['s] failure to use reasonable efforts to notify the Plaintiffs prior to the burial of their son, violated the procedural due process clause of the Fourteenth Amendment of the United States Constitution and Section 245.07 of the Florida Statutes.
32. The Defendant County had a custom and/or practice of not attempting notifying the next of kin when once they receive[d] an unclaimed body for burial.
33. As a result of the Defendant County's violation of the procedural due process clause of the Fourteenth Amendment of the United States Constitution, the Plaintiffs have suffered emotional anguish, emotional distress, and additional costs for reburial.
[3] The allegations against the City were, in pertinent part, as follows:

36. The Plaintiffs as the next of kin of the deceased Jay Crocker had a constitutionally protected property interest in the body of Jay Crocker and a right to procedural due process under the Fourteenth Amendment of the United States Constitution prior to the deprivation of their property interest.
37. On December 5, 1995 continuing though June 1, 1996, Pleasant, acting under color of law, as police Officer of the City of West Palm Beach, deprived the Plaintiffs of their procedural due process rights under the Fourteenth Amendment of the United States Constitution by failing to notify them of the death of their son, Jay Crocker and thereby depriving them of the right to process [sic] the body of Jay Crocker for burial or disposition in any other lawful manner for a period of six months.
38. The Defendant City was aware that Defendant Pleasant failed to follow standard operating procedures and that him [sic] actions had resulted in the violation of the rights of others in the past....
. . . .
41. The Defendant City's system of review has also failed to subject Defendant Pleasant to adequate discipline, closer supervision or retraining and therefore is a direct and proximate cause of the damages suffered by the Plaintiffs.
42. As a result of the Defendant City's actions and insensitivity for the need to supervise, retrain and adequately discipline its police officers[,] the Plaintiffs have suffered damages including emotional anguish, emotional distress and costs related to the burial of their son, Jay Crocker.
43. The failure of Defendant Pleasant to notify the Plaintiffs of the death of their son and thereby deprive their [sic] of their right to possess the body of Jay Crocker for burial or disposition in any other lawful manner was a direct and proximate result of the Defendant, City of West Palm Beach's deliberate indifference to, permission and toleration of, lack of adequate training, discipline, supervision and conduct of police officers of the West Palm Beach Police Department and was violative of the procedural due process clause of the Fourteenth Amendment to the United States Constitution, for which Title 42 U.S.C. Section 1983 provides a remedy.
[4] Because this case is before us after the trial court granted a motion for judgment on the pleadings, our inquiry is a narrow one and we "must accept as true all well-pleaded allegations of the non-moving party. Judgment on the pleadings can be granted only if, on the facts as admitted for purposes of the motion, the moving party is clearly entitled to judgment." Windle v. W.W. Windle Co., 731 So.2d 36, 37 (Fla. 4th DCA 1999).
[5] The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.
[6] A claim under section 1983 may be brought in state court. See Maine v. Thiboutot, 448 U.S. 1, 10-11, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).
[7] Florida state courts have followed this same analytical framework:

Procedural due process rights derive from a property interest in which the individual has a legitimate claim. Once acquired, a property interest falls within the protections of procedural due process. A property interest may be created by statute, ordinance or contract as well as by policies and practices of an institution which support claims of entitlement.
Metropolitan Dade County v. Sokolowski, 439 So.2d 932, 934 (Fla. 3d DCA 1983) (citations omitted).
[8] In Lawyer, a husband sought damages under Missouri law for the negligent diagnosis of the cause of death of his wife and under section 1983 for the alleged denial of due process caused by Kernodle's "erroneous" and "premature" communication of his conclusions of the cause of death. 721 F.2d at 632.
[9] More recently, the Eighth Circuit declined to consider whether there was a constitutional violation arising from the photographing of the plaintiff's deceased son in his coffin after the funeral because the plaintiff "fail[ed] to allege facts sufficient to support her claim that Appellees violated her right to sepulchre." Riley, 153 F.3d at 630. In affirming the granting of the motion to dismiss, however, the Eighth Circuit analyzed Missouri law that based causes of action for interference with the decedent's body not on the "fiction" of an "infringement on a quasi property right of the nearest kin" but on "the mental anguish" of the person claiming the right to bury the decedent. Id. Nevertheless the Eighth Circuit did not reach the issue of whether there would be a "constitutionally protected interest," affirming the dismissal because "Riley does not allege any physical insult to the deceased nor any interference with the visitation, funeral, or burial." Id.
[10] Unlike other traditional property interests, however, there is no recognized right to possess the remains of a deceased relative for commercial purposes. See §§ 245.16, 872.01 Fla. Stat. (2000) (prohibiting the purchase or sale of human organs and tissue); 42 U.S.C. § 274e (federal law preventing the sale of human organs). Likewise, the State may perform an autopsy when necessitated by the circumstances mandated by statute. See § 406.11, Fla. Stat. (2000).
[11] Section 768.28(9)(a) provides the applicable standard:

No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function. The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
[12] Although holding that allegations and proof of negligence were not sufficient to demonstrate a deprivation of a constitutional right, the U.S. Supreme Court declined to determine whether "something less than intentional conduct, such as recklessness or `gross negligence' is enough to trigger the protections of the Due Process Clause." Daniels, 474 U.S. at 334 n. 3, 106 S.Ct. 662. Some federal courts, however, have recognized that a section 1983 claim may be based on recklessness or deliberate indifference. See Stemler v. City of Florence, 126 F.3d 856, 865-66 (6th Cir.1997) (deliberate indifference); Hill v. Shobe, 93 F.3d 418, 421 (7th Cir.1996) (criminal recklessness or deliberate indifference); Davis v. Fulton County, 90 F.3d 1346, 1352-53 (8th Cir.1996) (rejecting gross negligence).
[13] This is an important distinction because, as the United States Court of Appeal for the First Circuit has explained:

There are two theories under which a plaintiff may bring a substantive due process claim. Under the first, a plaintiff must demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment. Under the second, a plaintiff is not required to prove the deprivation of a specific liberty or property interest, but, rather, he must prove that the state's conduct "shocks the conscience."
Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 622 (1st Cir.2000).
[14] In Arnaud, the Fifth Circuit ultimately determined that the parents had not suffered a constitutional invasion of any property right under section 1983 because the state postdeprivation tort claims adequately remedied the essential aspects of the property interests alleged. 870 F.2d at 309. The Fifth Circuit concluded that because Louisiana allows actions to seek recovery for intentional torts and provides a cause of action to recover for unauthorized tampering with a corpse, "[p]resumably, the above state remedies will adequately redress the Arnauds for any injuries they have suffered." Id.
[15] In Fuller, the Eighth Circuit recognized the "quasi-property" right of the widow in the body of her deceased spouse but declined to find a constitutional invasion of that right occasioned by the state's removal of certain organs. 724 F.2d at 719. The Eighth Circuit concluded that any "quasi-property rights [the widow] had in her husband's internal organs, if protected by the Constitution, were also protected by [an] Arkansas statute" that allowed the widow to request the return of her husband's organs after the autopsy. Id.
[16] Section 245.07 provides for the notification of the relatives of a deceased person before that person is buried. Nonetheless, this Court has determined that there is no cause of action against a governmental entity under state tort law for mental anguish based on negligent handling of a dead body in the absence of physical injury where the actor's conduct was only negligent or even where the heightened requirement of wanton misconduct was met. See Gonzalez, 651 So.2d at 676. In particular, this Court has stated that:

[E]ven assuming that the hospital's actions were willful, Jackson Memorial Hospital, as a county-owned hospital, is immune from liability for a willful, wanton or malicious conduct claim against one of its employees. See § 768.28(9)(a), Fla. Stat. (Supp.1988). "The very need to allege and prove willful, wanton or malicious conduct to sustain an action against [an employee] makes the case non-actionable against the county because of the statute which continues to surround governmental units with the shield of sovereign immunity in the face of such conduct." Kirker v. Orange County, 519 So.2d 682, 684 (Fla. 5th DCA 1988).
Id. at 676.
[17] We note that the Eleventh Circuit has interpreted United States Supreme Court precedent to mean that "a state does not deny procedural due process simply by granting reasonable tort immunity to state entities and officials." Rittenhouse v. DeKalb County, 764 F.2d 1451, 1458 (11th Cir.1985) (applying Georgia law); see also Powell v. Georgia Dep't. of Human Res., 114 F.3d 1074, 1082 n. 11 (11th Cir.1997) (plaintiff's argument that the State's "postdeprivation process is inadequate because the State has invoked sovereign immunity" as to tort claims is foreclosed by Rittenhouse).